No. 27,219.

ANNA F. WOHLFORT, *Appellee*, v. AXEL T. WOHLFORT, LOUISE C. WOHLFORT AND BESS M. WOHLFORT, *Appellants*.

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Review—Ruling on Demurrer—Time for Appeal.* In an action for alimony wherein the defendants demurred to the petition, which demurrer was overruled and no appeal was taken from the ruling within six months, the legal questions raised by the demurrer must be regarded as having been finally determined and are not thereafter open to review.

2. DIVORCE—*Independent Action for Alimony—Setting Apart Specific Property to Wife.* In such an action where no divorce is sought the court has power to make an equitable division of the property of the parties and set apart to the wife real estate of the husband—following *Osman v. Osman,* 86 Kan. 519, 121 Pac. 327.

3. SAME—*Independent Action for Alimony—Third Party Defendants.* In such an action where other parties than the husband claimed the property sought to be set apart to the wife, it was competent for her to make such claimants parties defendant in order to have settled therein the ownership of the property.

4. SAME—*Independent Action for Alimony—Determining Rights Under Will.* The claimants alleged that they held the complete title to all the land involved which had been derived through a will made by the husband's father, a part of which land the wife alleged was owned by her husband, and it is held that the inquiry and determination of the ownership of the land was a mere incident of the action for alimony and is not to be regarded as a contest of the will.

5. WILLS—*Forfeiture of Devise by Withholding Will from Probate.* Where the devisees under the will had knowledge of its existence and had it under their power and control for more than three years without offering it for probate, it became ineffective as to them and the land so devised became intestate property. The subsequent probate of the will did not operate to revive the devise.

Appeal and Error, 3 C. J. p. 1040 n. 12. Husband and Wife, 30 C. J. pp. 1080 n. 59, 1082 n. 25, 1088 n. 63, 1093 n. 13; 38 L. R. A. n. s. 959; 1 R. C. L. 879. Wills, 40 Cyc. p. 1226 n. 77; 28 R. C. L. 361.

6. WILLS—*Devisees' Knowledge of Will—Evidence.* The evidence examined and held to be sufficient to support the finding that the devisees in the will knew of its existence and had it under their power and control without offering it for probate for more than three years.

7. DIVORCE—*Independent Action for Alimony—Abandonment.* The charges of the wife that her husband had abandoned, neglected and wronged her, and had failed in his marital duties towards her, are held to have been sustained by the evidence, and that. it warranted the granting of alimony and a share of his property, and further, that the award made cannot be held to be excessive.

8. SAME—*Generally.* Other objections have been considered and are not deemed to be material.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed March 12, 1927. Affirmed.

*Park B. Pulsifer, Clyde L. Short,* both of Concordia, and *C. Vincent Jones,* of Clay Center, for the appellants.

· *W. D. Vance, R. E. McTaggart* and *H. H. Van Natta,* all of Belleville, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to obtain alimony, brought by Anna F. Wohlfort against her husband, Axel T. Wohlfort; and his mother, Louise C. Wohlfort, and Bess M. Wohlfort, his sister, were joined as defendants. After stating the marriage relation and her fidelity to her marital obligations, she alleged that her husband abandoned her in Chicago where they had been living for some time, leaving her in an enfeebled condition resulting from illness and a surgical operation which she had undergone late in October, 1922, from which she had not then and has not now fully recovered, and that since the abandonment he has failed and neglected to provide funds or means of support, and that since that time she has been required to depend upon the good will and charity of friends and relatives. She also alleged that he is physically able to earn funds with which to provide for himself and her, and is also the owner of property with which he could provide support. In respect to the property she alleged that besides certain personal property he had an interest in the assets of the estate of his deceased father, including rents and profits derived from land of the value of $4,000; besides, it is alleged that he owned an undivided one-sixth interest in real estate consisting of town lots and farms in the aggregate of 1,227½ acres, and that his interest in this real estate was reasonably

worth a sum in excess of $30,000. She alleged that Louise C. Wohlfort and Bess M. Wohlfort claimed some interest in the real estate which had descended to her husband, and therefore they were made parties, but the exact claims made by them were not known to her, but she believed that they were based upon a purported will claimed to have been made by his father, Thure Wohlfort, who died in November, 1916. She averred that Bess M. Wohlfort had instituted proceedings in the probate court of Republic county where she procured a probate of an instrument claimed to be the last will of her father, Thure Wohlfort, by which it was sought to vest the title to the real estate mentioned in her mother and herself in equal shares, but their claims under the purported will and pretended probate were without foundation, in fact or in law, inasmuch as the defendants had had in their possession and under their control the purported will for more than three years prior to the time the same was offered for probate and more than six years after the death of Thure Wohlfort, and that whatever claims they had under the will had been forfeited, and the real estate had become intestate property, and plaintiff therefore asked for temporary and permanent alimony from defendant, Axel T. Wohlfort, and that she be awarded a just proportion of the property owned by the defendant.

Following a number of motions for temporary alimony and other purposes, including contempt proceedings, the history of which may be found in part in *Wohlfort v. Wohlfort*, 116 Kan. 154, 225 Pac. 746, and 118 Kan. 292, 235 Pac. 111, Axel T. Wohlfort filed an answer consisting of a general denial and averments to the effect that he had no interest in the real estate mentioned by the plaintiff, that he recognizes the validity of the will made by his father, and had been without knowledge of it or control over it until after his return to Kansas in March, 1923. He specifically denied that he had been guilty of gross neglect of duty towards his wife, and that when he left Chicago he turned over to her all of the property he possessed except some worn out machinery and a few animals of little value that were on the farm. He added that plaintiff had never since he left Chicago offered to live with him, nor communicated with him, and that he has only met her in court when she was attempting to put him in jail because of his inability to give her the money she wanted. Louise C. Wohlfort alleged that her husband died testate, leaving a will which had been probated and that her son Axel was not a legatee nor had he been given any interest in the estate of Thure Wohlfort under the will. The answer of Bess was to the same

effect, in which she set up a copy of the will, executed September 27, 1912, in which it was recited that the testator gave one-half of all the property, real, personal or mixed, with which he was seized and possessed to his wife, Louise C. Wohlfort, and the other one-half of the same to his daughter, Bess M. Wohlfort, and named his daughter Bess as executrix. She alleged that she had no knowledge of the existence of the will until in March, 1923, when with the assistance of her mother she made a search among old papers and found the will which had been kept in an old trunk belonging to her father where he kept deeds, abstracts and papers of that kind. In the evidence was a transcript of testimony introduced in the two contempt proceedings. The court called a jury to pass on the facts relating to the title to the real estate and reserved to itself the decision of other questions. In the decree entered in May, 1926, the court adjudged that plaintiff was entitled to judgment against defendant's mother and sister on the findings of the jury, that Axel T. Wohlfort was the owner of a one-sixth interest in the real estate of Thure Wohlfort, and further that Axel T. Wohlfort had been guilty of extreme cruelty as well as abandonment and gross neglect of duty towards his wife, awarding her permanent alimony out of his one-sixth interest in certain property which was described and which amounted to 1,227 acres.

In defendants' appeal they insist first that the demurrer of Louise C. and Bess M. Wohlfort to plaintiff's petition as amended should have been sustained. The grounds of the demurrer were that the plaintiff did not have legal capacity to sue them inasmuch as the suit was one to obtain alimony from her husband, and that his mother and sister had no interest in that controversy, and that so far as the estate of Thure Wohlfort was concerned it was a matter wholly within the jurisdiction of the probate court. Another ground of the demurrer was that several causes of action were improperly joined, in that plaintiff sought to join with her action for alimony another to set aside a will and have the property declared to be intestate and a part of it set over to plaintiff as alimony. The demurrer was overruled and the six months period for appeal passed but no appeal was taken. Instead Louise C. Wohlfort filed an answer setting out defenses as already stated, and then prayed that the title to all of the real estate described in the petition be quieted as against any claim of the plaintiff or of plaintiff's husband, Axel T. Wohlfort. Bess M. Wohlfort filed a separate answer alleging de-

10—123 KAN.

fenses on the merits, and she prayed that the plaintiff should take nothing by her action and asked the court to quiet the title to her undivided half interest in the real estate involved.

The action of the court overruling the demurrer not having been brought up on appeal within six months after the order was made, it must be assumed that defendants have relinquished their contention that there was a misjoinder of causes of action, and also of the point that plaintiff had no right to sue them in this action. After the lapse of the statutory period for taking an appeal the right to review the ruling was no longer available either in a separate proceeding or in an appeal from the rendition of the final judgment. The decision on the demurrer was a final determination of the issues of law raised by it. (*White v. Railway Co.*, 74 Kan. 778, 88 Pac. 54; *Slimmer v. Rice*, 99 Kan. 99, 160 Pac. 984; *King v. Stephens*, 113 Kan. 558, 215 Pac. 311; *Andrews v. Glidden*, 122 Kan. 291, 251 Pac. 1078.) These defendants not only abandoned the points made by their demurrer, but they answered plaintiff's petition which set forth her claims for alimony from her husband and also that it should be taken out of land in which her husband had an interest and to which his mother and sister were asserting he had no interest, but that the entire property belonged to them. They met her contentions on the merits and waived not only the legal questions raised on the demurrer, but also asked the court for affirmative relief by quieting their title not only against the plaintiff but also against Axel T. Wohlfort, who had joined them in asserting that he had no interest in the land. It follows that the decision on the demurrer must be regarded as a final determination of the legal questions so much discussed by the defendants.

It is contended that in an action for alimony alone there is no power in the court to award the wife specific property. Defendants argue that the statutes relating to the subject which provide for the division or setting aside of property apply to cases for divorce, and that an award of specific real property in fee can never be made where alimony alone is sought. After providing for an action to obtain divorce and for the relief that may be granted in such actions, including allowances of alimony and an equitable division of property of the parties, the legislature in 1909 enacted the provision that—

"The wife may obtain alimony from the husband without a divorce in an action brought for that purpose in the district court for any of the causes for

Wohlfort v. Wohlfort.

which a divorce may be granted. The husband may make the same defense to such action as he might to an action for divorce, and may for sufficient cause obtain a divorce from the wife in such action." (R. S. 60-1516.)

The effect of that provision and the point now urged by defendants were carefully considered in *Osman v. Osman*, 86 Kan. 519, 121 Pac. 327. It was there determined that in an action for alimony where no divorce was asked, the court had the power to set apart to the wife real estate of the husband. We have examined the authorities cited by defendants, but see no reason to depart from the rule of that decision, and the opinion of the court sufficiently answers the contentions of the plaintiff upon the question.

The demand of plaintiff to obtain alimony because of the faults of her husband was abundantly sustained by the evidence, and it would have warranted the granting of a divorce if that relief had been asked. There is in fact little contention, and no room for contention, that the finding of the court to the effect that the plaintiff's husband had abandoned her and was guilty of gross neglect of duty and extreme cruelty towards her, was not well supported by the testimony.

Another contention is that the award made was excessive and that she was not entitled to the real estate awarded to her as permanent. alimony. In regard to the extent of the award, which was a share in the real estate which descended to her husband from his father, it was found, first, that the husband had a one-sixth interest in all the real estate owned by his father at the time of his death, and the court in its judgment, as we have seen, set aside to plaintiff one-sixth of several tracts which defendants say is worth $15,000, but which some of their witnesses say was worth but $9,877.75. and which other witnesses say was only of the value of $7,198.10, and that there was evidence that the division of property left the interest of plaintiff's husband to the amount of $9,655. The award made, while it may be regarded as liberal, cannot be held to be so excessive as to warrant interference with the judgment..

It is contended that the plaintiff's husband had in fact no interest whatever in the land since it had been devised to his mother and sister by the will of his father, a will which had been admitted to probate. The plaintiff contends that the will was ineffective in that Louise C. and Bess M. Wohlfort, devisees named therein, with-held the will from probate for more than three years with knowledge

of its existence and while it was within their power and control. The statute pertaining to such a situation provides:

"No lands, tenements, or hereditaments shall pass to any devisee in a will who shall know of the existence thereof, and have the same in his power and control for the term of three years, unless within that time he shall cause the same to be offered for or admitted to probate; and by such neglect the estate devised to such devisee shall descend to the heirs of the testator." (R. S. 22-233.)

Upon the questions relating to the real estate a demand for a jury trial was made by Louise C. and Bess M. Wohlfort, which was allowed, and special findings of fact were returned by the jury as follows:

"Q. When did the defendant Bess M. Wohlfort first learn that there was in existence a will of her deceased father, Thure Wohlfort? A. At the time it was made.

"Q. When did the defendant, Bess M. Wohlfort, first learn the contents and provisions of said will? A. At the time it was made.

"Q. Did the defendant, Bess M. Wohlfort, have in her power and under her control the will of her deceased father, Thure Wohlfort, prior to March 1, 1923? A. She did.

"Q. State in what manner the defendant, Bess M. Wohlfort, had the will of her deceased father in her power and control? A. By knowing the nature of the contents of the trunk and having possession and control of it."

It is said that the proceeding to obtain a share of the property by plaintiff was in the nature of a contest of the will which had been probated, and further, that plaintiff did not have any interest in the estate which entitled her to contest the will. This action cannot be regarded in any sense as a contest of the will. It was brought to obtain permanent alimony and a part of the property owned by her husband. The inquiry as to his property was a mere incident of the action for alimony. It devolved on the court to ascertain and determine what property was in fact owned by the husband in order that an equitable division of it might be made. It was within the power of the court to make such inquiry and order. It having been alleged that other parties than plaintiff's husband were claiming to own the entire property, it was proper to make these claimants parties defendant. The code provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of the question involved therein." (R. S. 60-411.)

These claimants availed themselves of the opportunity to have

their claims tried and determined, and their rights in respect to the legal questions were finally determined on the rulings on the demurrer, from which no appeal was taken. It may be said that they based their rights under the will, and they are insisting that the probated will is conclusive as against the plaintiff. First, it may be said that there is no defect in the form of the will nor any claim of incapacity of the testator. The instrument was duly witnessed, and so far as we can see there were no grounds for resisting the probate of the will if it had been presented by defendants for that purpose within the period of three years. It is conceded by the plaintiff that the will was valid when made and that no grounds for contest existed. The point made is that the claimants had forfeited their rights by withholding it from probate. The forfeiture does not arise by reason of any act of the testator or as to whether there had been conformance with the statutory requirements, but it is because of the act of the divisees in failing to have it probated within the required time. Under the statute a devisee who has knowledge of the existence of the will and has it under her power and control for over three years after the death of the testator, without offering it for probate, loses any right to property which the will may attempt to devise to such devisee. (*Moore v. Samuelson,* 107 Kan. 744, 193 Pac. 369.) When that time passes and the delinquent devisee has not offered it for probate it becomes dead as to her, but of course it would not be invalid as to other devisees who had not joined in the suppression of the will. As to the two devisees, the will in question was ineffective after three years from the death of the testator if they knew of its existence and it was within their power and control, and the subsequent probate of the will would not impart life to the forfeited devise. It then became intestate property which would descend to the heirs of the testator. It appears that the will in question was executed September 27, 1912, the testator died November 24, 1916, and the will was not offered for probate until March 30, 1923. It is insisted, however, that evidence fails to show that the instrument was within the power and control of these claimants. There is no doubt they knew that a will had been made, as both of them were present when the will was made. Immediately upon the death of the testator, Louise and Bess, his widow and daughter, took possession of the property of the testator as well as his money, while another daughter and a son, not mentioned in the will, claimed no

interest in the property or in its income, indicating that these devisees not only knew that the will was made but also knew that all the property had been devised to them. At the time the will was executed by Thure Wohlfort, his wife, Louise C., made her will, and both were placed in an old trunk kept in an adjoining closet of their bedroom. Although they testified that they had no occasion to look in the trunk and did not know the will was in it, testimony was given of facts and circumstances contradictory of their testimony which may have led the jury to reject it. · Both knew that a will had been made, and from the death of the testator they assumed that the entire property had been given to them and proceeded to conduct the business as if they were complete owners of the entire property. They knew that the papers of the testator had been kept in the trunk, they had possession of the home and its contents, including the trunk, which remained in the place where it had been kept during the life of the testator, and wherein all his important papers were kept. Knowing that a will had been made, it was the natural place they would look for it if they desired to have it probated. There was testimony tending to show that they did not desire to have the will probated. One witness testified that she was in the home at one time and had a conversation with Louise and Bess, in which Louise said in response to an inquiry why the will had not been probated, they did not like to do that, that Axel did not want to have it done, and so they did not probate it. She also testified that Bess said it had not been probated because they thought that Axel and her sister, Carrie, didn't want to have it done. Another witness testified that on another occasion Louise told him that she had not probated the will before it was done because she did not think it had to be done, and he testified that both mother and daughter took part in the conversation. After this action was brought and defendants had been advised by counsel as to their defense, and also that the will should be obtained, she went to the trunk and had no difficulty in finding the will.

We conclude that there is sufficient testimony to sustain the finding that both the devisees had knowledge of the existence of the will, and that they had it in their power and control more than three years before offering it for probate.

Some objections to rulings on the admission of testimony are made, but we find no material error was committed in that respect,

nor was there error in the refusal to submit some additional questions that were requested by defendants.

There were instructions requested and refused about which complaint is made, but an examination of the charge of the court discloses that. it covered the issues completely and is in accord with the views expressed in this opinion. We find no error in the charge given to the jury.

It is contended that the attitude of the judge during the trial showed that he was antagonistic to the defendants both in his rulings and in comments that were made. Adverse rulings are not necessarily evidence of prejudice, and the colloquies of the judge with counsel, pointed out as betraying prejudice, do not impress us as evidence that prejudice existed or that error can be based thereon.

Finding no material error in the proceedings, it follows that the judgment must be affirmed.