No. 30,432.

LOTTIE A. WEST, *Appellant*, v. MABEL WEST, and WILLIAM ROBERT WEST, as Executor of the Last Will and Testament of Elijah F. West, Deceased, et al., *Appellees.*

(9 P. 2d 981.)

Opinion filed
April 9, 1932.

*Albert L. Orr, J. Lester Orr,* both of Medicine Lodge, *W. P. Waggener, J. M. Challiss, O. P. May, B. P. Waggener,* all of Atchison, *E. D. Ellison* and *David P. Dabbs,* both of Kansas City, Mo., for the appellant.

*R. F. Crick, M. C. Bucklin,* both of Pratt, *J. N. Tincher,* of Hutchinson, *Riley W. MacGregor* and *Adrian S. Houck,* both of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action, which was in the nature of ejectment and partition, was brought by Lottie A. West, the second wife of Elijah F. West, who died on July 13, 1930, leaving his widow, the plaintiff, and four children by a former marriage, who have been named as defendants. Before his marriage to plaintiff he had made a will in which he devised and bequeathed to his four children his property, consisting of real estate and personal property valued at about $100,000. This action involves the validity of an election by the widow under the will and a family settlement as to the disposition of the estate of the deceased. The jury made findings of fact upholding the election and the family settlement, and the judgment of the trial court was rendered in favor of the defendants. Plaintiff appeals.

It appears that the day following the burial of the deceased testator the widow and four children of the deceased and their spouses came together at the Coats State Bank, where the defendant had transacted business and where he had a lock box in which the will and other papers were kept. The will was opened and read in the presence of the widow and all the heirs, and the attention of plaintiff was called to the fact that she was not named in the will. She was asked whether she claimed under the law or under the will. There is testimony that she said she "realized that she could claim one-half of the property but did not want that; she wanted to settle it according to Daddy's will." She was told by the banker that they had to have a contract of family settlement showing the disposition of the property, and that he was not competent to do that; that they should have a lawyer to write the contract and that it should be done when the will was probated. This was agreed to by all of them, they examined the contents of the lock box which contained securities of one kind and another and listed the specific

property which went to each of the heirs under the will, and no objection was made by plaintiff to anything that was done on that day. Next day they went to Pratt to obtain the assistance of attorneys in the preparation of the family settlement and the probate of the will. Crick & Bucklin, attorneys, were employed to prepare the contract of family settlement. The contract was dictated by the attorneys in the presence of all the parties, and as each paragraph was dictated it was discussed and plaintiff and others made suggestions of changes in the contract. The attorneys explained to plaintiff what her rights were under the law, and she replied that:

"She knew she was entitled to one-half the property but she did not want that share, she said she had not earned the property, that it was made years ago and she did not want them to think she had married the children's father for his money."

On Saturday when the contract was completed they went to the probate court, but found that he was not present and they returned home. Two days later and on Monday, they went back to the probate court with their attorney, and the probate judge then explained to Mrs. West the law with reference to her share in the estate and to what she was entitled under the law of descents and distributions. She then stated that she wanted to abide by the will of her husband and a family settlement agreed upon. A written election was then entered, and is as follows:

"The undersigned, widow of Elijah F. West, deceased, having had fully explained to her, by said court, the provisions of the last will and testament of the said Elijah F. West, her deceased husband, and her rights under the same, and also the provisions of the law concerning descents and distributions, and her rights under the said law, in the event of her refusal to take under the will, and being fully advised and informed in the premises, hereby waives any right, title, interest or claim she may have in and to the estate of the said Elijah F. West and consents that the said last will and testament may be admitted to probate and taken as and for the last will and testament of the said testator. She makes this election and declaration for the reason that the children of the said Elijah F. West, as the devisees in his last will and testament, have entered into a contract with the undersigned dated July 19, 1930, by the terms of which agreement the undersigned becomes the owner of and is entitled to a one-fifth interest in that part of the estate of the said Elijah F. West not specifically devised by the terms third, fourth, fifth and sixth paragraphs of the said last will and testament.

"Witness the hand of said widow this 19th day of July, 1930."

By the terms of the contract entered into, the widow became the

owner of and is entitled to a one-fifth interest in that part of the estate not specifically devised and is spoken of as a child's part. On that day the will was probated.

The plaintiff insists that she is entitled to one-half of the real estate involved for the reason that the election is illegal and is void and the family settlement and deeds that were made in pursuance of the contract are void for want of consideration. It is also insisted that there was error in restricting the arguments of the plaintiff to the jury; in refusing to exclude witnesses during the trial; in restricting cross-examination of defendants' witnesses; in excluding evidence offered by the plaintiff in the admission of evidence over objection of the plaintiff, and the abuse of discretion by the court throughout the trial.

The important questions raised on this appeal relate to the validity of the election made by the widow as well as the family settlement which was reduced to writing and signed by the widow and the children of the testator. There is no dispute as to the signing of the family agreement nor as to the signing of the election by the plaintiff, but plaintiff says she did not understand and was not told by anyone before the execution of the papers that she was entitled to one-half of the estate notwithstanding the will, nor of the fact that she was entitled to household goods and an automobile. She did testify that she did know at the time of the first family meeting at the Coats Bank on Friday, that she could have one-half of the estate if she would ask for it; that she was not going to ask for it, and did not ask for it, but she said this statement was made before the will was produced for probate.. She further testified that she had said she only wanted a child's part in the estate. She admitted that the probate court had a conference with her in a room of the court, but added that the probate judge did not explain her rights under the law, and further that Crick & Bucklin, attorneys, who prepared the contract, did not tell her of her rights under the law before she signed the contract or the written election. It is clear that there was abundant proof by witnesses, some of whom were disinterested, to sustain the finding that she had been fully advised of her rights in the estate under the law and had repeatedly stated that she desired the property to go to the children of the testator as specifically devised and that she would take a child's part out of the residue. She gave her reasons for her decision, and some of her own testimony in the case tends to confirm that given by the witnesses

for the defendants. She willingly went with the heirs of the deceased to have a contract drawn to carry out the family settlement and participated in the discussion of its provisions. She signed the contract without protest or objection and then went before the probate court, where the judge explained to her for about thirty minutes the provisions of the will, her rights under it and her rights under the law, and his testimony is that this was done and that the statutes relating to the subject were read to her before her election was made, which was after the will was presented for probate. The probate judge testified that he was satisfied that the plaintiff fully understood the law as explained to her and her rights under it. The evidence is such as to fully sustain the findings made that plaintiff knew that she was an owner and entitled to one-half the estate before she signed the contract of settlement and made her election. With the character and volume of the testimony presented upon which the findings are based it must be held that the controversy is ended in this court so far as the questions of fact therein are involved. (*Buchanan v. Gibbs,* 26 Kan. 277.)

Some questions of law and procedure are raised by the plaintiff on this appeal. One is that the election made by her does not conform with the provisions of the statute and also because the election was made after the date named in the instrument. That instrument purports to have been signed on July 19, 1930, whereas it was in fact signed on July 21, 1930. The writing was prepared on Saturday, July 19, and the date affixed on the expectation that it would be presented to the probate court on that day after the will had been filed for probate. The parties, including the plaintiff, went to the office of the probate court after the writings had been completed and there found that the probate judge was out of the city. They then decided to return on Monday following, and on that day they returned to the probate court, where the will was filed and admitted to probate and the election made. There is no question as to the time when the will was filed for probate or of the time when the election was made in the probate court, and no doubt the records in that court will show that it was on July 21, 1930. The fact that it was dated two days before does not discredit or invalidate the election. If no date or any wrong date had been affixed, it would not have affected the validity of the election. The court, in accordance with its duty, would have filed it as of the date it was actually made. As to that time there is no dispute nor is there any real

question but that the election was made after the will was filed for probate. It was competent for the parties to show the true date of the instrument. The date inserted in the writing was a formal and not an essential part of the election, and the date written at the end of the election does not fall within the rule that a written instrument may not be varied by parol proof. It has been said:

"As a general rule it is admissible to show by parol the true date of an instrument, even though such evidence may tend to vary the writing, or to supply the date when it is omitted, for the date is not generally such an important element of the agreement that the reason of the rule against parol evidence applies thereto, and in addition to this the evidence usually amounts to mere correction of a mistake." (22 C. J. 1208. See, also, *Shelton v. Dunn*, 6 Kan. 128.)

There is no ground for the complaint that the terms and manner of the election did not accord with the statutory provision respecting it. (R. S. 22-246.) It was made by the plaintiff in person in open court after the provisions of the will, her rights under it and under the statute had been explained to her. She then and there chose to take under the family settlement, the terms of which were recited in her election, including the share she was to receive under the family settlement. The election made is a clear expression of an election to accept a share of the estate under the family settlement, which confirmed and carried out certain parts of the will, modified other parts, and in which plaintiff explicitly relinquished all rights she had under the law of descents and distributions, and agreed that the will might be admitted to probate with the exception that she have a certain share as specified in the agreement, and no reason is seen why it should not be upheld.

It is argued that the compromise contract and the transfers under it were without consideration, that she was entitled to one-half of the estate under the law and therefore no consideration moved to her. While this contention is made in brief and oral argument, it appears in the record that in the presentation of the motion for a new trial the plaintiff withdrew her motion for a new trial upon the issue of want of consideration, and hence she is not in a position to press or rely on that issue as a ground of error. Besides the withdrawal of the issue there was the advantage of an amicable and economical settlement in which the parties avoided contentions as to the division and disposition of the shares in the estate through formal and lengthened procedure in probate court, the gaining of early

possession of the shares of each as well as the avoidance of possible litigation as to the rights of the several heirs. It has been said: "That family settlements are favorites of the law, and when fairly made should not be disturbed by those who entered into them." (*Riffe v. Walton,* 105 Kan. 227, 182 Pac. 640.) In the opinion in the Riffe case, where it was contended that the widow would have received more under the statute than she did under the family settlement, it was said:

"The amount or value of the share set apart to her as dower, it is said, was much less than the share to which she was entitled under the law, but if the settlement was fairly made and covered all the property, it cannot be set aside because that assigned to her may have been less than she was entitled to under a statutory distribution." (p. 232.)

See, also, *Conrad v. Conrad,* 36 Pa. Sup. Ct. 154; *Hilton v. Rackey,* 37 App. D. C. 83; *Hibbard v. Kent,* 15 N. H. 516.

A further consideration is that in the will three of the children were each devised a tract of land of which they were in possession, and to the fourth, Lillie McAdoo, the devise was only a life estate in the tract she occupied, the remainder at her death to be divided equally among the other children. Under the agreement and what was deemed to be justice toward her, she was given the absolute title to that tract. The setting aside of the agreement and election would necessarily materially affect the rights of the other children under the will. The settlement made between the children agreed upon with the plaintiff was itself a consideration and the plaintiff should not be permitted to make a revocation that would injuriously affect others. (40 Cyc. 1985.)

Complaint is made that the court erred in refusing to grant plaintiff's request that witnesses, excepting the parties, be excluded from the court room until they were called to testify. That was a matter within the discretion of the court and nothing is seen in the record of the proceedings to indicate that the ruling was an abuse of that discretion. (*State v. Sweet,* 101 Kan. 746, 168 Pac. 1112.)

A number of objections are made as to the admission and exclusion of evidence restricting the cross-examination of defendants' witnesses, and restriction of the argument of counsel for plaintiff, all of which have been considered, but we find nothing material in them, nothing that would justify discussion.

The judgment of the district court is affirmed.