No. 45,356

In the Matter of the Estate of Rosa C. Harper, Deceased. (ELIZA-BETH HARPER HOOD, MARARET HARPER SNOW, CAROLYN H. McGUIRE, KAREN DOOLEY BOWER, and PETER CHAMBERLIN DOO-LEY, *Appellants*, v. THE LAWRENCE NATIONAL BANK, LAWRENCE, KANSAS, EXECUTOR OF THE ESTATE OF ROSA C. HARPER, DECEASED, *Appellee*.)

(446 P. 2d 738)

Opinion filed November 9, 1968.

*George K. Melvin* and *Raymond F. Rice,* of Lawrence, argued the cause, and *James W. Paddock,* of Lawrence, was with them on the brief for appellants.

*Forrest A. Jackson,* of Lawrence, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The appeal is from the district court's judgment that the order of the probate court admitting the last will and testament of Rosa C. Harper, deceased, to probate in Douglas County and appointing the Lawrence National Bank, Lawrence, Kansas, as executor, was not only proper, but required.

Rosa C. Harper duly executed her last will and testament in Douglas County on October 12, 1962, and named the Lawrence National Bank as her executor to serve without bond. She devised her estate, after payment of debts and other expenses, to her three daughters and two grandchildren, being children of a deceased daughter, who were all of age and who resided outside the state of Kansas.

On October 4, 1967, the testatrix died, leaving as her entire estate personal property of the estimated value of $150,000. The estate contained no real estate, and was free from debt.

On October 6, 1967, the decedent's three surviving daughters wrote the bank that they were cognizant of the will their mother executed on October 12, 1962, in which she named the bank as executor of her estate, and that:

"We hereby request The Lawrence National Bank to retain Robert B. Oyler as attorney for the bank in the probating of the will and the handling of her estate."

Thereafter, on October 20, 1967, the bank's reply to their letter of October 6, 1967, requesting it retain Robert B. Oyler as attorney in the probating of their mother's estate reads in part as follows:

"The policy of the Lawrence National Bank is to retain the attorney who prepared the will, which in this case is Forrest A. Jackson, Lawrence, Kansas."

On October 23, 1967, the bank filed its verified petition in the probate court to probate the will of Rosa C. Harper, deceased, and

for its appointment as executor, and, among other things, alleged the following:

"That the said Rosa C. Harper left surviving as her sole and only heirs at law the following:

"Elizabeth Harper Hood, a daughter;

"Margaret Harper Snow, a daughter;

"Carolyn Harper McGuire, a daughter;

"Karen Dooley Bower, a grand daughter; and,

"Peter Chamberlin Dooley, a grandson.

"That the decedent had no spouse or children or adopted children or issue of deceased children, natural or adopted, who survived her, other than the persons above named."

It further alleged that the decedent's original will was in the possession and custody of Robert B. Oyler, which necessitated attaching a copy thereof to its petition. The petition was set for hearing on November 16, 1967, at 10:00 a. m. and notice by publication and by mail was duly given.

On November 14, 1967, Mr. Oyler was served with a subpoena a *duces tecum* in which he was commanded to appear before the probate court on November 16, 1967, with the decedent's original will. On that date, Mr. Oyler produced the will and it was filed in the probate court.

On November 10, 1967, all of the beneficiaries named in the decedent's will filed written defenses and objections to the bank's petition alleging, among other things, that they were the sole and only heirs at law of the decedent; that as her sole heirs at law each would take a share of her estate under the statutes of descent and distribution in exactly the same proportions as devised in the will; that there were no creditors of the estate and all bills owing had been paid; that as the beneficiaries and decedent's sole heirs at law, they had arrived at a full and complete family settlement agreement for the distribution of the estate; that the family agreement had been reduced to writing and signed by all the heirs, devisees and parties in interest; that the property of the estate consisted solely of personal property and there was no necessity or reason for probating or administering the estate; that all parties in interest had agreed that the estate should not be probated or administered and that the last will and testament of Rosa C. Harper, deceased, should not be admitted to probate. A copy of the family settlement agreement was attached to the pleading and made a part thereof, and it was further alleged all that was necessary as far as the

decedent's estate was concerned was a finding of descent at the end of one year after her death. The prayer was that the court refuse probate of the decedent's will and dismiss the bank's petition for probate.

The instrument attached to the beneficiaries' defenses and objections to admitting the will to probate was entitled "AGREEMENT" and reads:

"WHEREAS, Rosa C. Harper, also known as Rosa Chamberlain Harper, died in Kansas City, Missouri, on October 4, 1967; and

"WHEREAS, Rosa C. Harper left as her sole heirs at law the following named persons, all of legal age:

"Elizabeth Harper Hood, her daughter;

"Margaret Harper Snow, her daughter;

"Carolyn Harper McGuire, her daughter;

"Karen Dooley Bower, her granddaughter;

"Peter Chamberlain Dooley, her grandson,

the last two named persons being children of Helen Harper Dooley, a predeceased daughter of Rosa C. Harper; and

"WHEREAS, under the laws of descent and distribution of the State of Kansas, the estate of Rosa C. Harper would descend to the following named persons in the following proportions:

"Elizabeth Harper Hood, an undivided one-fourth;

"Margaret Harper Snow, an undivided one-fourth;

"Carolyn Harper McGuire, an undivided one-fourth;

"Karen Dooley Bower, an undivided one-eighth;

"Peter Chamberlain Dooley, an undivided one-eighth; and

"WHEREAS, the said Rosa C. Harper left a last will and testament, dated 'October 12, 1962, and by the terms of her said will, she devised and bequeathed her property as follows:

"Elizabeth Harper Hood, an undivided one-fourth;

"Margaret Harper Snow, an undivided one-fourth;

"Carolyn Harper McGuire, an undivided one-fourth;

"Karen Dooley Bower, an undivided one-eighth;

"Peter Chamberlain Dooley, an undivided one-eighth, which is exactly the same distribution that the heirs of Rosa C. Harper would take under the laws of descent and distribution of the State of Kansas; and

"WHEREAS, Rosa C. Harper owned no real estate at the time of her death, and all of the assets of her estate are liquid assets, consisting of stocks, bonds, cash and savings accounts; and

"WHEREAS, all of the debts of Rosa C. Harper have been paid in full; and

"WHEREAS, Rosa C. Harper was a resident of Douglas County, Kansas, at the time of her death; and

"WHEREAS, there is no necessity to probate the will of Rosa C. Harper in order to determine state inheritance tax or federal estate tax; and

"WHEREAS, the heirs of Rosa C. Harper will save several thousand dollars by not probating the will of Rosa C. Harper;

"Now, THEREFORE, it is agreed as a family settlement by and between all

of the heirs, devisees and legatees of Rosa C. Harper, deceased, as herein named, in consideration of the mutual agreement of the parties hereto and of the additional amount of several thousand dollars which will be available for distribution to them by reduction of the probate court costs and expenses of administration under the procedure hereinafter provided for, that the last will and testament shall not be probated in Douglas County, Kansas, or in any other county in the State of Kansas, or any other state; that the assets of Rosa C. Harper shall remain to accumulate for one year, and that after one year from the date of death of Rosa C. Harper, a determination of descent as provided by the laws of the State of Kansas shall be brought in Douglas County, Kansas, and all of her property, after payment of legal fees, court costs and taxes, shall be distributed as follows:

"Elizabeth Harper Hood, an undivided one-fourth;

"Margaret Harper Snow, an undivided one-fourth;

"Carolyn Harper McGuire, an undivided one-fourth;

"Karen Dooley Bower, an undivided one-eighth;

"Peter Chamberlain Dooley, an undivided one-eighth.

Parties hereto further agree that Robert B. Oyler be and he is hereby retained to assist in the making out of income tax returns for Rosa C. Harper from January 1, 1967 to October 4, 1967; to assist in making out income tax returns on the estate from October 4, 1967 to October 1, 1968; and that he also prepared the federal estate tax return and the Kansas state inheritance tax return; that he commence and complete a determination of descent proceeding in Douglas County, Kansas, which will be started one year from the date of death of Rosa C. Harper, and that he assist in the transferring and assigning of the property to the heirs of Rosa C. Harper as herein provided.

"Parties hereto further agree that the said Robert B. Oyler be and he is hereby authorized to oppose and contest any effort made to probate the last will and testament of said decedent, and that he is hereby authorized and directed to retain any attorney in Lawrence, Kansas, to assist him in such a contest, provided that Robert B. Oyler pay out of his fee the fee for the services of such other attorney so retained."

The family settlement agreement was dated October 28, 1967, and was circulated for execution, which was completed between that date and November 6, 1967, being signed by all the beneficiaries and heirs at law and duly acknowledged by them in states other than the state of Kansas and in a province of Canada. The bank, as the named executor, did not sign the agreement to withhold the will from probate.

The bank filed its reply to the beneficiaries' defenses and objections and alleged that the decedent's three daughters made a written request to the bank to probate the decedent's will; that in keeping with its policy, the attorney who drew the will had been retained by the bank as the executor of the decedent's will; that the Harper family agreement, "is an AGREEMENT FOR SUPPRESSION OF

WILL, in violation of Kansas law and against public policy and is null and void and unenforceable"; that the administration and conservation of the assets of the decedent's estate was necessary and proper; that all assets including stocks, bonds, money, savings and all other assets should be inventoried and appraised; that federal and state income tax returns should be made; that the Kansas inheritance taxes and federal estate taxes should be determined and paid; that there is a period of nine months within which claims may be filed against the estate following the first publication of notice of appointment; that it had not been determined who were all of the alleged interested parties in the decedent's estate, and that the testatrix had a right to direct the method of management and disposal of her property after her death, which the court cannot be compelled to disregard. The bank renewed its prayer for the probate of the will and its appointment as executor.

At the hearing of the bank's petition to probate the will, the probate court heard arguments of counsel, requested briefs, and continued the hearing until December 4, 1967. On that date, the defenses and objections of the beneficiaries were rejected, and upon proof of the will, it was admitted to probate. The bank was appointed executor to serve without bond, and upon filing its oath, letters testamentary were issued.

The beneficiaries timely appealed to the district court and filed an application to prohibit and restrain the bank from proceeding to act as executor. The *ex parte* order was refused, and the case was set for hearing on its merits on December 14, 1967.

On December 29, 1967, the district court filed a memorandum opinion and entered judgment that the order of the probate court admitting the will to probate and appointing the bank as executor was not only proper, but was required.

At the outset, we wish to make it clear that no question is presented respecting the validity of the execution of Rosa C. Harper's will or of any claim she lacked testamentary capacity to execute the same on October 12, 1962.

Turning to the legal questions presented, the appellants contend that the family settlement agreement was valid and authorized the withholding of the decedent's will from probate and that proceedings for determination of descent in lieu of full probate are available, adequate and proper. They further contend that the bank's petition for probate of the decedent's will was based upon insufficient

grounds since it was not shown the family settlement agreement constituted an illegal or improper withholding of the decedent's will from probate. In support of their contentions they argue that family settlement agreements are favorites of the law and may provide for distribution either in accordance with or contrary to the will and that such agreements may dispense with the probate of the will and that the assent of the executor named therein is not required. They cite and rely mainly upon *In re Estate of Swanson*, 239 Iowa 294, 31 N. W. 2d 385. They argue there is a vital distinction between the suppression of a will in violation of K. S. A. 59-618 by any person who has possession or knowledge of such will and access to it and who knowingly withholds it from probate, and a family settlement agreement not to probate the will where it has been produced to the probate court and there is no element of deception as to the existence of the will.

The appellants further argue there is no criminal penalty under K. S. A. 59-618, and, in fact, the only penalty under the statute is that any person who knowingly withholds a will from probate for more than one year may not take thereunder, and that the appellants could not be so penalized since their share is the same either under testacy or intestacy; that there was no concealment or improper withholding of the will which was actually before the court on November 16, 1967, when the bank's petition was heard; that the appointment of an executor was not necessary for administration and conservation of the assets of the estate, or to enable creditors to file their claims within the prescribed period since there were no creditors by whom claims could be filed as all obligations, including the funeral expenses, had been paid; that an executor was not necessary to determine and satisfy state and federal estate taxes since provision is made in Kansas for the determination of inheritance taxes without probate or administration and that K. S. A. 59-2251 relating to the determination of descent provides for a tax finding prior to a final descent; that the only duty devolving upon the executor was the preservation and distribution of fixed assets which could be performed by the administrator designated in the family settlement agreement and the bank could do nothing more than serve as a mere conduit to transmit to the beneficiaries those assets since the will created no trust, and that the bank as the named executor had no pecuniary interest in the estate other than that of administration.

In conformity with the request of the three daughters two days after the death of the decedent, and knowing of the existence of the will and of its nomination as executor, the bank filed its verified petition in the probate court, prayed that the will might be proved, and caused it to be set for hearing and notice thereof was duly given. In the meantime, the beneficiaries and heirs at law decided that probate of the will be opposed and the family settlement agreement to withhold the will from probate was prepared, signed and acknowledged and filed with their defenses and objections to the admission of the will to probate. This occurred prior to the hearing of the bank's petition to probate the will. Upon this state of the record, was the Harper family settlement agreement a valid defense to the probate of the will? A majority of the court is of the opinion it was not.

The appellants concede the petition to probate the will was sufficient in form to comply with the requirements of K. S. A. 59-2220 (all references hereafter are to Kansas Statutes Annotated unless otherwise noted), and no claim is made that the bank as the named executor was not authorized to file a petition for probate of the will. In *In re Estate of Smith,* 168 Kan. 210, 212 P. 2d 322, it was held that a person named as executor in a will is a "person interested in the estate" of the decedent and qualified under 59-2221 to petition for probate of the will or for administration. Moreover, under our own early decisions and various provisions of the probate code and cases construing them, it was the duty of the bank as the named executor in the will to present it for probate and endeavor to procure its admission. In *In re Estate of Hooper,* 144 Kan. 549, 555, 61 P. 2d 1335, it was said:

". . . The executor was named in the will. It was his duty to offer the will for probate. It was necessary that this should be done for the benefit of all concerned. . . ." (1. c. 555.)

See, also, *In re Estate of Smith,* supra, p. 213, and *In re Estate of O'Leary,* 180 Kan. 419, 421, 304 P. 2d 547.

The law of Kansas gives to every person competent to do so, the right to make a will, and to select someone in whom he has confidence to execute it. It is easy to conceive of many valid wills which the parties directly interested might not care to have probated, but that appears to furnish no reason for suppressing or withholding from probate such an instrument. In this state no will shall be effectual to pass real or personal property unless it shall have been

duly admitted to probate (59-616), and application for probate is required to be made within one year after the death of the testator. (59-617.) It is the policy of our law that all wills shall be delivered to the probate court having jurisdiction as soon after the death of the testator as is possible. Our statutes relating to the subject are 59-618, 59-620 and 59-621. The provisions of 59-618 bars any beneficiary from all rights under a will who has possession of it, or has knowledge of its existence and access to it for the purpose of probate, and knowingly withholds it from probate for more than one year. The bar prescribed by the statute does not arise by reason of the act of the testator as to whether it was executed in the manner prescribed by law, but because of the act of the beneficiary in failing to have it probated or offered for probate within the required time. (*Moore v. Samuelson,* 107 Kan. 744, 193 Pac. 369; *Wohlfort v. Wohlfort,* 123 Kan. 142, 254 Pac. 334; *Marr v. Barnes,* 126 Kan. 84, 267 Pac. 9; *Swisher v. McMain,* 153 Kan. 401, 110 P. 2d 765.) The provisions of 59-621 place the positive duty upon any person having custody of a will to deliver it to the court having jurisdiction to probate it (*In re Estate of Morgans,* 188 Kan. 50, 57, 360 P. 2d 1069), and the court may compel a person having the custody of the will to produce it for the purpose of having it proved. These statutes express the legislative intent that the will of every person shall be offered for probate. They decree there is a clear public policy in the establishment of every legally executed will. That policy requires the probate of a will, not its suppression or to withhold it from probate.

In the instant case, the probate court ordered the person having custody of the decedent's will to produce it in court which was complied with, and the will was filed of record. The probate court did not order the will produced in court for inspection, but for the purpose of being proved. (*Pee v. Carlyle,* 120 Kan. 200, 243 Pac. 296; 2 Bartlett's Kansas Probate Law and Practice, § 545, p. 47.) The privilege to make a will would be a barren privilege if it did not extend to probate, and when the will was produced by the custodian it was the duty of the probate court to notify the executor or others interested in the will and to proceed upon the bank's petition, irrespective of the attitude of the beneficiaries, to find if the will was freely executed by a competent person as her will and was duly witnessed.

In the *Pee* case it was said:

".  .  . The proceeding is *in rem,* executor, proponent, devisee, legatee, or other person interested is not a party in the sense that he has authority to withdraw the subject matter from the court's jurisdiction, and there can be no nonsuit. (Citations.) If it shall appear that the will was duly executed and attested, and that the testator possessed the requisite testamentary capacity and was under no restraint, the court shall admit the will to probate. (R. S. 22-218.) The law does that much for the dead man. . . ." (l. c. 202, 203.)

It was further said:

".  .  . In a proceeding to probate a will, the inquiry is limited to the single subject, is the instrument a will? If so, it is entitled to probate; if not, it is not entitled to probate. A will has no effect other than potentiality until it has been probated. If probate be refused, the instrument cannot serve as foundation of a claim to property. If the instrument be admitted to probate, claims to property may be based upon it . . ." (l. c. 203.)

While the *Pee* case was decided prior to the adoption of the present probate code, after the enactment of the code the case was cited with approval in *In re Estate of Reed,* 157 Kan. 602, 142 P. 2d 824, *In re Estate of Osborn,* 167 Kan. 656, 208 P. 2d 257, and *In re Estate of Smith,* supra. In *In re Estate of Reed,* supra, it was held:

"In a proceeding to probate a will the inquiry is limited to the question whether such instrument is entitled to probate and prior to the determination of that issue orders relating to proceedings incident thereto are not *res judicata."* (Syl. ¶ 3.)

In *In re Estate of Osborn,* supra, it was held:

"In a proceeding to probate a will, the inquiry is limited to the single question whether such instrument is entitled to probate." (Syl. ¶ 2.)

In *In re Estate of O'Leary,* supra, it was said:

"In conclusion, the only issue to be determined at this stage of the proceedings is that set out in 3 Bartlett's Probate Law and Practice, § 1237, where it is said:

" 'On a hearing for the probate of a will the burden of proof is upon the proponent of the will to show: (1) the testamentary character of the instrument, (2) the testamentary capacity of the testator, and (3) the due execution of the will in accordance with statutory requirements.' (p. 88.)" (l. c. 422.)

We agree with the appellants that family settlement agreements are favorites of the law and that beneficiaries under a will have a right to agree among themselves upon a distribution of the estate contrary to a disposition made under the will or to abrogate the will, and such an agreement containing the mutual promises of

the contracting parties is based upon a sufficient consideration. The foregoing rule has been so frequently and forcefully stated that the marshalling of our many decisions on the point is unnecessary and we cite only a few. (*Riffe v. Walton,* 105 Kan. 227, 182 Pac. 640; *West v. West,* 135 Kan. 223, 9 P. 2d 981; *Myers v. Noble,* 141 Kan. 432, 41 P. 2d 1021, 97 A. L. R. 463; *Brent v. McDonald,* 180 Kan. 142, 300 P. 2d 396.) There are at least two exceptions which limit the rule permitting family settlement agreements. First, that beneficiaries under a will cannot defeat a trust or specific restriction placed upon the property in the testator's will, and second, such an agreement may not deprive one not a party thereto of his interest in the estate or prejudice the rights of nonconsenting creditors. (*Myers v. Noble,* supra; *Brent v. McDonald,* supra.)

Neither of the foregoing exceptions is applicable in the case at bar. The will created no trust; all of the beneficiaries and heirs at law of the decedent are parties to the family agreement, and they alleged, which was not denied, there were no creditors. However, the foregoing rule is applicable only in testate estates after the will of the decedent has been duly proved and admitted to probate. As indicated, our statutes relating to probate of a will decree a clear public policy in the establishment of every legally executed will, and we hold that the probate court did not have the authority to determine the validity or approve the Harper family agreement at the time of hearing the bank's petition to admit the decedent's will to probate (*In re Estate of Osborn,* supra), and that such agreement to withhold the will from probate was not a valid or proper defense to that probate proceeding.

It is not contended the Harper family settlement agreement was invalid. In order to obtain a decree of final settlement and an assignment of the personal property in accordance with its provisions, it would be necessary to have the agreement submitted to and approved by the probate court. (*Brent v. McDonald,* supra; *In re Estate of Hinshaw,* 164 Kan. 550, 190 P. 2d 386.)

We note the appellee's contention that it was an interested party in the estate and since it did not sign the Harper family settlement agreements to withhold the will from probate, the agreement was ineffective and was not binding upon the executor named in the will. The point is not well taken. The nomination of an executor is a part of a decedent's will. (*In re Estate of Grattan,* 155 Kan. 839, 130 P. 2d 580.) Unlike an heir at law, a devisee, a legatee, or

a creditor of the decedent, the bank had no pecuniary interest in the distribution of the estate of which it was deprived by the family settlement agreement. The fact that it was nominated as executor and had the right and duty to petition for probate of the will, and would be compensated when appointed, gave it no such pecuniary interest. Its interest in the estate after appointment as executor, aside from its duty to faithfully serve as such fiduciary, was for reasonable compensation only in return for services rendered. (*In re Estate of Smith,* supra.)

In view of what has been said, it is unnecessary to pass upon the appellant's contention that the provisions of our statute (59-2251) relating to the determination of descent are available, adequate and proper. The will of the decedent has been admitted to probate, the bank appointed as executor, and the estate is in the process of administration. In view of that fact, the limitation of the issues on this appeal does not require any further discussion pertaining to the administration of the estate.

We have fully considered the authorities and decisions from foreign jurisdictions cited by the appellants holding that beneficiaries under a will may enter into a family settlement agreement not to probate the will and have the estate distributed as intestate or in any manner they see fit (*In re Estate of Swanson,* supra; *Henry v. Spurlin,* 277 Ky. 114, 125 S. W. 2d 992; *Martin Estate,* 349 Pa. 255, 36 A. 2d 786; *In re Will of Pendergrass,* 251 N. C. 737, 112 S. E. 2d 562; 57 Am. Jur., Wills, § 1013, p. 657; Anno. 117 A. L. R. 1252), but in view of what has been said and held, we are of the opinion that whatever the rule may be elsewhere, those authorities are not controlling in this jurisdiction, and it follows that the Harper family settlement agreement constituted no valid defense to the probate of the decedent's will.

The judgment is affirmed.

KAUL, J. (dissenting): I cannot agree that our statutes governing the probating of a will decree a public policy that every valid will must be admitted to probate nor do I concur in the conclusion based thereon that a family settlement agreement, valid in all respects, wherein all of the legatees and devisees of the will and heirs of the deceased agree to withhold the will from probate, does not constitute a legal defense to the petition of a named executor, the sole proponent of the will.

The favor with which this court has always viewed family settlements has been so frequently and so forceably stated that a listing of decisions and quotations therefrom is unnecessary. However, the question posed where the interests of the members of a family, who have agreed to withhold a will from probate, are in conflict with the interest of a named executor, who insists on the probation of a will, has not been considered by this court.

Our statutes relating to the subject are K. S. A. 59-618, 59-620 and 59-621. The statutes mentioned give probate courts power to compel the production of a will and prescribe penalties and impose liabilities for the concealment, or withholding by one who has custody or knowledge of a will or access to it. There is no direct obligation expressed in any of the statutes mentioned that the will be admitted to probate after it is delivered or produced. Considering the pertinent provisions of our probate code, together with the expressions of this court, that family settlement agreements are favored in the law, I am unable to find a declaration of public policy such as that announced in the majority opinion. This is the viewpoint taken in most jurisdictions where the question has arisen. (117 A. L. R., Anno., 1249; 95 C. J. S., Wills, § 325, p. 159; 57 Am. Jur., Wills, § 1013, p. 657.)

From a reading of cases dealing with the subject, it appears that many of the jurisdictions referred to have probate code provisions quite similar to those of this state. What appears to be the majority rule is stated in 95 C. J. S., Wills, § 325:

"It has been held that a compromise or settlement agreement, entered into for the purpose of avoiding the trouble and expense of a will contest, is not void as against public policy, where no persons or interests other than the persons and interests of the contracting parties are prejudically affected thereby, unless it is entered into through connivance or fraud. . . ." (p. 162.)

A minority rule prevails in some jurisdictions, notably Wisconsin (*Graef v. Kanouse,* 205 Wis. 597, 238 N. W. 377 [1931]), Connecticut (*Tator v. Valden,* 124 Conn. 96, 198 Atl. 169, 117 A. L. R. 1243) and North Carolina (*In re Will of Pendergrass,* 251 N. C. 737, 112 S. E. 2d 562.), wherein agreements have been declared to be invalid as contrary to public policy.

In New York a statute (Surrogate's Ct. Act. § 144, subd. 2), similar to our previous code provision (R. S. 1935, 22-218, repealed in 1939), was held to compel the admission of a will to probate. (*In re Cherkoff's Will,* 189 N. Y. S. 2d 530.)

In *In re Estate of Swanson,* 239 Iowa 294, 31 N. W. 2d 385, the precise question was stated as follows:

"Proponents' appeal presents the question whether the settlement agreement is a valid defense to their attempt to probate the will and codicils. . . ." (p. 296.)

The Iowa court rejected the minority rule stating:

"Like other courts, we have not followed the Wisconsin rule which is based on the theory a will is more sacred than a contract and it is the duty of courts to carry out the wishes of the testator regardless of the wishes of beneficiaries. . . ." (p. 300.)

More recently, the Supreme Court of Oregon was confronted with the identical conflict between a named executor and parties in interest who had entered into a written agreement to withhold a will from probate. In *Dover v. Horger et al,* 225 Ore. 492, 358 P. 2d 484, in adhering to the majority rule, the court considered the Oregon statutes and policy and in disposing of the matter stated:

"The trial court found that the agreement was executed in good faith; that all obligations of the estate were paid; no good purpose would be served in requiring probate and therefore denied plaintiff's petition to probate the will and estate.

"There was no reason to compel the expense of administration in this case. No creditor or other interested party was involved. The only interest plaintiff had was to collect his fee as executor. No statute or policy can be found which would require the court to grant administration where the only right that was involved was that of the person named as executor to receive his fee." (p. 494.)

In *Rubinstein v. Rubinstein* (Mo. 1955), 283 S. W. 2d 603, the Supreme Court of Missouri, in considering the force and effect of statutes similar to ours, stated:

"The practice of withholding a will from probate is certainly not to be recommended (and was not recommended by Mr. Shifrin in this case); while we have a statute giving the probate courts power to compel the production of a will, Section 468.460 RSMo 1949, V.A.M.S., we have no statute placing upon anyone the direct obligation to produce and probate a will. Limbaugh, Missouri Practice, Vol. 1, p. 727. In this situation it appears that there is nothing inherently unlawful in an agreement between *all the heirs and all the devisees* to withhold the probate of the will if the property is actually distributed in accordance with the provisions of the will. See 57 Am. Jur., Wills, § 1013; Page on Wills, Vol. 4, p. 951. . . ." (pp. 606, 607.)

The rationale of the majority rule is set out in 2 Page on Wills (Bowe-Parker Revision), § 25.5, pp. 624, 625, and the cases in support thereof are catalogued.

In this case the members of the family agreed that the will should not be probated, that the assets of the estate should remain to accumulate for one year and thereafter a proceeding be instituted for a determination of descent as provided by the laws of Kansas. The proceeding referred to is provided for in K. S. A. 59-2250 and 2251, the prefatory provisions of which read:

"Whenever any person has been dead for more than one year and has left property, or any interest therein, *and no will has been admitted to probate* nor administration had in this state, . . ." (Emphasis supplied.)

The statutes mentioned were enacted as a part of the new Probate Code, effective July 1, 1939. The act was described by the Judicial Council as a simple and inexpensive method of determining heirship. From the language used, in particular that in emphasis, it appears the applicability of the act was not to be limited to intestate estates. I have no doubt but what such has been the practical construction placed upon the statute by many members of the Kansas Bar, as suggested by appellants. (See comment, 2 Bartlett's Kansas Probate Law and Practice, 1964 Pocket Parts § 538, p. 10.)

In their written objection to the probate of the will in this case, the members of the family do not ask the court to approve the settlement agreement or to determine the rights of the heirs-at-law entitled to the estate. They merely request the court to refuse probation of the will and to dismiss the petition. No other determination is necessary or appropriate at this stage of the proceedings. There was no contention made as to the validity of the agreement or any suggestion of the existence of any of the exceptions in the majority opinion to the rule permitting family settlement agreements. The agreement here provides for the disposition of the estate exactly in accord with the terms of the will and, also, with the statutes providing for intestate succession (K. S. A. 59-501 *et seq.*). The effect of a holding that a family settlement agreement is not a valid defense to an executor's petition for probation of a will deprives the members of a family of any choice as to the administration of their own inheritance and as a practical matter actually gives the option to a named executor.

I think it may be said in this case, but for insistence on the part of the named executor that the will be admitted to probate, the

case would not be here. In my view the decision of the trial court should be reversed.

FONTRON and O'CONNOR, JJ., join in the foregoing dissent.