No. 36,470

SALLIE HAGERMAN, *Appellee*, v. FREDRICK J. HAGERMAN, ROLLIN P. HAGERMAN, JAMES D. HAGERMAN, ZERITA J. HAGERMAN; each individually, and each as a representative of a class of persons as might at the time of the death of George J. Hagerman, be his lawful heirs-at-law and next of kin; GEORGE J. HAGERMAN, a single man, *Appellees*, DALE L. MORRIS, W. E. KIRKWOOD, B. E. MYERS, BURT COMER and SUNFLOWER PETROLEUM COMPANY, INC., Appellants.

(165 P. 2d 431)

Opinion filed January 26, 1946.

*Lester L. Morris,* of Wichita, was on the briefs for the appellants.

*H. W. Stubbs,* of Ulysses, guardian *ad litem,* was on the briefs for the minor appellees.

No appearance was made for appellees Sallie Hagerman and George J. Hagerman.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for a declaratory judgment to determine the merchantability of title to certain real property in which it was necessary for the court to construe a certain contract and will made in pursuance thereof and later instruments attempting to rescind the contract and revoke the will. The trial court held the original contract and will were not rescinded and revoked by the subsequent instruments. The appeal is from the judgment based on those findings.

The facts are not controverted and may be stated as follows: George W. Hagerman, a resident of Grant county and the owner of 1,840 acres of land in that county, died intestate on some date late in 1933, leaving as his sole heirs at law his widow, Sallie Hagerman, and his son, George J. Hagerman. The son was married and he and his wife, Wauneta (spelled Juanita in the deed hereinafter mentioned), were the parents of three sons, Fredrick J., Rollin P.,

and James D. Hagerman, the oldest then about six years of age. Prior to his death George W. Hagerman had frequently expressed the wish that upon his death his widow should have the life use of his property, that thereafter the son should have the use of the property for life, and that the property should pass on the death of the son to the persons who were then his heirs at law; but he had made no provision with respect thereto. Soon after the death of George W. Hagerman the widow, son, and his wife went to the office of a capable, reputable attorney, and Sallie Hagerman advised him the purpose of their visit was that they desired to carry out the wishes of her deceased husband. The result was they had prepared and executed three instruments: (1) A written agreement between George J. Hagerman and Sallie Hagerman; (2) the will of Sallie Hagerman, and (3) a deed. The contract named George J. Hagerman as first party and Sallie Hagerman as second party, recited the facts above stated as to the death of George W. Hagerman, and continued:

"WHEREAS, it was the wish of the said George W. Hagerman in his lifetime that upon his death his widow, aforesaid, should have the use and benefit, rents, income and profits, of all of his real estate for and during the term of his [her] natural life; and that upon her death his son, George J. Hagerman aforesaid, should have the use and benefit, and the rents, issues and profits, of such real property for and during the terms of his natural life; and that upon his death the legal title and equitable estate in and to all such real property should vest, in fee simple, in such persons as might at that time be the lawful heirs at law and next of kin of the said George J. Hagerman; and

"WHEREAS, the parties hereto recognize such disposition of said real property as being beneficial to each of them, and desire to so dispose of the real property of which the said George W. Hagerman died seized as to meet with his wishes as aforesaid:

"Now THEREFORE, in consideration of the premises, and of the mutual covenants and agreements of each other, and of the sum of One Dollar and other good and valuable considerations paid by each of the parties hereto to the other, the receipt and sufficiency of which considerations are hereby acknowledged, it is hereby agreed by and between George J. Hagerman, of Grant County, Kansas, aforesaid party of the first part, and Sallie Hagerman, of Grant County, Kansas, aforesaid, party of the second part; that the said party of the first part shall, concurrently with the execution and delivery of these articles of agreement, convey unto the party of the second part by good and sufficient deed of general warranty, subject to the lawful claims of such persons as may be creditors of the estate of said George W. Hagerman, deceased, an undivided one-half interest in and to all of the real property of which the said George W. Hagerman died seized, as hereinbefore described; and shall at the same time execute and deliver unto the party of the second

part a good and sufficient Bill of Sale for all of his interest in and to all of the personal property of which the said George W. Hagerman died seized.

"It is further agreed by and between the parties hereto, for the consideration hereinbefore expressed, that the party of the second part shall, concurrently with the execution and delivery of the warranty deed hereinbefore mentioned, and of these articles of agreement, make, execute, publish and declare a Last Will and Testament, and shall thereby constitute the party of the first part her sole and only legatee and devisee of all of the personal property of which she shall die seized; and shall thereby bequeath and devise unto the said party of the first part the use and benefit, rents, issues and profits, of all of the real property hereinbefore described, and of such other real property as she may die seized and possessed, for and during the term of his natural life; and at his death shall devise and bequeath all such real property, in fee simple to those persons who shall at the time constitute his lawful heirs at law and next of kin.

"It is further agreed by and between the parties hereto, for the considerations hereinbefore expressed, that during her life time the party of the second part shall not encumber said real property to an extent exceeding the present indebtedness of the estate of said George W. Hagerman, deceased; nor, if the present indebtedness of said estate be decreased, shall said party of the second part thereafter increase the amount of encumbrances against said real property; nor shall she otherwise dispose of any portion thereof; and that the Will of said party of the second part, hereinbefore provided for, shall contain similar provisions restricting the encumbering or disposal of said real property or any part thereof, by the party of the first part, in excess of the encumbrances existing thereon at the time of the death of the party of the second part.

"It is further agreed by and between the parties hereto, for the considerations hereinbefore expressed, that the Will aforesaid shall not be subject to revocation; and that should the party of the second part remarry she will enter into such ante-nuptial agreement with her intended husband, as will insure the validity of such Will.

"In Testimony Whereof, The Parties hereto have hereunto set their hands on this the third day of January, a. d. 1934.

"George J. Hagerman,
Sallie Hagerman."

This was duly recorded in the office of the register of deeds of Grant county, Miscellaneous Book 8, at page 81.

On the same day of the execution of the contract, January 3, 1934, Sallie Hagerman executed her will, which provided, *first,* for the payment of her just debts and expenses of last illness and burial; *second,* she gave to her son all the personal property of which she might die siezed, if he survived her; if not to the persons who would be the heirs at law of her son. The third and fourth paragraphs read as follows:

"THIRD: I do hereby give, devise and bequeath unto my said son, George J. Hagerman, for and during the term of his natural life, the rents, issues, income, profits, use and benefits, of all of the real property of which I may die siezed and possessed; Provided, However, that said real property, during the life of my said son, shall not be encumbered to a greater amount than the encumbrances existing at the time of my death; nor shall it be encumbered to any extent except the necessary renewal of any mortgages existing at the time of my death; nor shall my said son have the right to otherwise dispose of any portion thereof.

"FOURTH: Subject to the provisions of paragraph numbered 'Third' herein, I do hereby give, devise and bequeath unto such persons as may under the laws of the State of Kansas constitute the heirs at law and next of kin of my said son George J. Hagerman at the time of his death (including unborn children then in being), all of the real property of which I may die siezed and possessed, to have and to hold the same unto them, their heirs and assigns, in fee simple, forever, and without restriction; but if my said son shall not be living at the time of my death I do hereby give, devise and bequeath all of the real property of which I may die siezed and possessed unto such persons then living (including unborn children then in being) as may at the time, under the laws of the State of Kansas, constitute his heirs at law and next of kin; it being my intention to dispose of all my real property in such manner that the fee simple title thereto shall pass to those persons who would inherit it under the laws of descents and distributions of the State of Kansas, should my said son out live me and die, intestate, seized and possessed of said real property in fee simple."

The fifth paragraph appointed her son as executor, to serve without bond. The instrument was properly dated, executed and attested by two witnesses and had endorsed thereon the following:

"The foregoing Will is hereby approved by me as complying with the provisions between said Sallie Hagerman and me, dated January 3rd, 1934, concerning the disposition of the property of my father, George W. Hagerman. Dated January 3rd, 1934. /s/ GEORGE J. HAGERMAN."

On the same date, January 3, 1934, George J. Hagerman and his wife, Juanita Hagerman, executed to Sallie Hagerman a general warranty deed for a one-half interest in the real property owned by George W. Hagerman at the time of his death, subject to encumbrances of record and provable claims against the estate of George W. Hagerman. This deed was duly recorded January 3, 1934, in the office of the register of deeds of Grant county in Deed Record 26, page 570.

The attorney who prepared the instruments executed on January 3, 1934, testified that Wauneta Hagerman was present during all the negotiations respecting the settlement of the estate of George W. Hagerman, deceased, and the execution of the contract, will and

deed, and took part in the discussion, and stated in substance that Mr. Hagerman, George's father, had little confidence in his business ability and had repeatedly expressed the wish that this property be preserved for such children as he might have at the time of his death, and that she, personally, thought that was a pretty good idea.

Promptly following the execution of these instruments on January 3, 1934, George J. Hagerman turned over to his mother all his interest in the personal property of which his father had died seized. While it is not specifically so stated in the record, we think it reasonably inferable therefrom that from the date of the execution of these instruments on January 3, 1934, Sallie Hagerman had the use, income and control of all of the real and personal property of which her husband died seized, up until August 22, 1944, when transactions were had which will be later set out.

Sometime in 1942 George J. Hagerman brought an action for divorce against his wife, Wauneta Hagerman, and respecting his property he alleged in his petition:

". . . that the parties have no real estate except that the plaintiff will be entitled to the income, use and benefit of certain real estate after the death of plaintiff's mother, the fee title to which real property will eventually vest in the plaintiff's children; that all such real estate was owned by plaintiff's father at the time of his death and that none of it represents the result of the plaintiff and defendant or either of them. Plaintiff further shows the court that plaintiff has but little personal property; that the same consists of certain farm machinery of little value to anyone except the plaintiff, 7 cattle, 16 hogs and a Model 1935 Chevrolet Automobile; . . ."

And in that action Wauneta Hagerman, in her answer, or perhaps cross petition, alleged:

". . . that the defendant and plaintiff have accumulated by their joint efforts all the property that plaintiff now has, which property includes household goods, pick-up, farm machinery and other property unknown to this defendant, for which the said plaintiff should account to the said defendant."

The action was heard and perhaps most of the evidence taken on August 12, 1942, but it was continued along for reasons not here important until December 7, 1942, at which time the court granted a decree of divorce, required plaintiff to pay into court for the benefit of the defendant the sum of $400 and gave to the defendant "all of the property of the parties"; gave plaintiff the custody of the three sons, Fredrick, Rollin and James Hagerman, and gave to defendant the custody of the daughter, Zerita Hagerman.

On August 22, 1944, Sallie Hagerman and George J. Hagerman

entered into a contract with Dale L. Morris, W. E. Kirkwood, B. E. Myers, Burt Comer and the Sunflower Petroleum Company, Inc., to sell to them an undivided one-half interest in and to all the oil, gas and other minerals in and under the real property described in the contract and deed of January 3, 1934, except one quarter section thereof.

On the same day, August 22, 1944, George J. Hagerman, as party of the first part and Sallie Hagerman as party of the second part, executed a written agreement which referred to the instruments executed January 3, 1934, recited that Sallie Hagerman desired to revoke her will, that George J. Hagerman was willing to grant to Sallie Hagerman the right to revoke the same in the event the contract of that date was mutually rescinded by the parties, and continued:

"THEREFORE, for and in consideration of the premises, and the mutual covenants herein to be performed, and the benefits accruing to each of the parties hereto, the parties agree as follows:

"FIRST: It is agreed by and between the parties hereto that the above mentioned contract dated the 3rd day of January, A. D. 1934, between George J. Hagerman and Sallie Hagerman be, and the same is hereby rescinded, annulled and cancelled, and the parties restored to the same position they were prior to the execution and delivery of said contract.

"SECOND: For the purpose of carrying out the rescinding of said agreement, the said Sallie Hagerman does hereby agree to reconvey to George J. Hagerman the undivided one-half (½) interest in and to the above described real property which he owned prior to the time of the execution of said agreement and which was conveyed to the said Sallie Hagerman pursuant to the above mentioned contract.

"THIRD: It is likewise agreed that the parties hereto shall be restored to the same position that they were prior to the execution and delivery of the above mentioned contract.

"FOURTH: Sallie Hagerman, by the execution of this agreement, does hereby revoke the above mentioned Last Will and Testament, and the said George J. Hagerman does hereby consent to said revocation.

"FIFTH: It is further understood and agreed that this revocation of the above mentioned contract and Last Will and Testament and the agreements herein contained shall extend to and be binding upon the parties hereto, their respective heirs, successors and assigns."

On September 2, 1944, Sallie Hagerman executed an instrument which recited:

"I, . . . do hereby revoke the Last Will and Testament . . . made by me and dated the 3rd day of January, A. D., 1934, . . ."

This was duly executed by her and attested and subscribed by two

witnesses. On the same date, September 2, 1944, Sallie Hagerman executed to George J. Hagerman a general warranty deed for an undivided one-half interest in and to all of the real property described in the original contract and deed of January 3, 1934, which deed was duly recorded in the office of the register of deeds of Grant county on September 5, 1944, in Book 30 of Deeds at page 191.

Sallie Hagerman brought this action against the defendants named in the caption of this opinion. It will be noted that Wauneta Hagerman is not named as a party defendant. The petition set up the matter of the contract and will of January 3, 1934, and pertinent matters which preceded it, the agreement between Sallie Hagerman and George J. Hagerman of August 22, 1944, and the instrument executed by Sallie Hagerman on September 2, 1944, revoking her former will, and stated that on August 22, 1944, Sallie Hagerman and George J. Hagerman had entered into a contract for the sale of mineral interests to the parties previously named; that their attorney, in passing upon the title to the property prior to the closing of that contract, raised a question as to whether the parties could make a valid renunciation of the contract of January 3, 1934, and whether the plaintiff could legally revoke the will made on that date; alleged there was an actual controversy between the parties; asked the court to construe the instruments and to hold that the contract of August 22, 1944, effectively revoked the agreement of January 3, 1934, and that the will of Sallie Hagerman had been revoked by that instrument and by the instrument which she executed on September 2, 1944. George J. Hagerman filed an answer which in substance adopted the allegations of plaintiff's petition. The defendants who contracted to purchase the mineral interests filed an answer asking the court to construe the several instruments, alleged they were ready, able and willing to carry out the contract for the purchase of the mineral interests if the title thereto was marketable, and joined with the plaintiff and George J. Hagerman for the construction of the instruments.

The trial court appointed a guardian *ad litem* for the minor defendants. He filed an answer, which included a general denial, and alleged the facts with respect to the execution of the instruments of January 3, 1934; that Wauneta Hagerman was present during all the negotiations respecting those instruments, took part in the negotiations and consented to the contract of that date, and joined in the deed of that date to the plaintiff by which she conveyed her

inchoate interests as the wife and heir apparent of George J. Hagerman to plaintiff; that the consummation of the contract and performance of its terms were impossible without her consent and participation therein; that she did participate in the negotiations leading up to the execution of the contract, although she did not actually subscribe her name to that document; that in fact the instruments executed as of that date constituted but a single transaction; that Wauneta Hagerman was one of the contracting parties; that her position was changed by reason of the execution thereof; that she surrendered valuable rights by her participation therein, and that she had not consented to the rescission of the contract nor to the revocation of the will; that at the time of the negotiations and execution of the instruments of January 3, 1934, the defendants, Fredrick J., Rollin P., and James D. Hagerman were present, but were at that time children of tender years and perhaps did not comprehend the nature and effect of the instruments; that Zerita J. Hagerman had not then been born; that none of the defendant children had acted upon said contract, deed or will, or changed their position by reason thereof, but that the nature of the transaction was and is such that no action could have been taken by them, or their position changed at any time prior to the bringing of this action, and that they were at all times mentioned, and are, minors and incapable of legal action; alleged the matters about the divorce hereinbefore mentioned, and that Wauneta Hagerman is still living and that it is impossible to restore her to the position she occupied immediately prior to the execution of the deed of January 3, 1934, and specifically denied that the contract of August 22, 1944, and the purported revocation of the will of Sallie Hagerman has the effect of cancelling the contract of January 3, 1934, and revoking her will of that date, insofar as the answering defendants are concerned.

At the trial both Sallie Hagerman and George J. Hagerman testified that at the time of the contract between them of August 22, 1944, they made no attempt to consult Wauneta Hagerman or any of the minor defendants, or to inform them of what was done.

The trial court made findings of fact and included all matters with reference to the execution of the instruments above mentioned, and further found:

"That in the negotiations leading up to the drawing and execution of such instruments [of January 3, 1934] said Wauneta Hagerman took an active part. If any of the children of defendant George J. Hagerman was present

such child or children were too young to understand the nature of the proceedings."

Also found that:

"An actual controversy has arisen among the parties hereto as to whether or not the transactions hereinbefore set out are such that the contract and Will may be abrogated by mutual consent of Sallie Hagerman and George J. Hagerman. . . .

"The transactions culminating in the deed and Will of January 3, 1934, were in the nature of a family settlement, and Wauneta Hagerman was a party thereto, and as such party has not consented to the revocation of said contract and Will nor to a reconveyance of any of the property involved.

"Defendants Frederick J. Hagerman, Rollin P. Hagerman, James D. Hagerman and Zerita J. Hagerman, nor any of them, has indicated unwillingness to accept under the terms of the Last Will and Testament of plaintiff Sallie Hagerman dated January 3, 1934."

And made the following conclusions of law:

"The consent of Wauneta Hagerman not having been procured, the Will, Contract and Deed dated January 3, 1934, are not subject to revocation as attempted by plaintiff, Sallie Hagerman and defendant, George J. Hagerman.

"The Will of Sallie Hagerman dated January 3, 1934, being wholly beneficial to the heirs at law of George J. Hagerman, acceptance thereof by them is presumed, and therefore is not subject to revocation as attempted."

The plaintiff and all the defendants except the minors filed a motion for a new trial and also filed a motion for judgment upon the findings of fact. These motions were presented to and considered by the court and denied, and judgment was entered in harmony with the court's findings of fact and conclusions of law.

The appellants here are the parties who contracted to purchase the mineral deed. Counsel for plaintiff and the defendant, George J. Hagerman, advised the court that they did not care to have a brief filed in this court on their behalf. Whereupon this court appointed H. W. Stubbs, Esq., of Ulysses, Kansas, as guardian *ad litem* for the minors, with instructions to present a brief on their behalf in this court. This has been done.

We now take up the points argued here. On behalf of appellants it is contended that the contract of January 3, 1934, was solely between Sallie Hagerman and her son, George J. Hagerman. It is pointed out that Wauneta Hagerman did not sign the contract, that all she signed was the deed with her husband to Sallie Hagerman. It is argued that all she lost by doing so was the rights given her by G. S. 1935, 22-108, then in force, or by G. S. 1943 Supp. 59-505, now in force, to a half interest in the land upon the death of her husband,

if she had not joined with him in the deed. We cannot sustain these contentions. The trial court found that what took place at the time those instruments were executed was in the nature of a family settlement. We approve that view. Such settlements are encouraged and sustained, when it is reasonable to do so. (See *Riffe v. Walton,* 105 Kan. 227, 182 Pac. 640, and cases there cited.) The doctrine has been approved repeatedly. Aside from that view, however, the evidence disclosed that all three of the parties participated in the discussion with their counsel about what should be done, and all of them agreed upon it. The testimony is uncontradicted that Wauneta Hagerman not only took part in the discussion but that she stated the reason why the decedent wanted a plan of that kind carried out, and that she "thought that was a pretty good idea," hence she agreed to it. The three instruments should be considered as constituting the agreement of the parties. That is not only apparent from the general situation, but the contract specifically provided that the deed described therein should be executed "concurrently with the execution and delivery of these articles of agreement," and further provided that the will mentioned in the contract should be executed "concurrently with the execution and delivery of the warranty deed hereinbefore mentioned." So, the contract itself tied all three instruments together. While the contract might have been drawn for Wauneta to sign it, as well as for her husband and his mother, the fact that it was not so drawn and that she did not sign it does not detract from the fact that it was but one of the instruments embodying the agreement of the parties. (See *Roseman v. Neinaber,* 100 Kan. 174, 166 Pac. 491.) Neither does it destroy the provisions of the contract itself, which in fact made it necessary for her to join with her husband in the deed. (See *Skinner v. Skinner,* 126 Kan. 601, 605, 270 Pac. 594.)

Wauneta Hagerman had a greater interest in the real property of her husband than counsel for appellants contend. At the time of the conference which led to the execution of these instruments she had what has been spoken of as an inchoate interest in her husband's property, an interest not easily defined, but something more than the ultimate right to a share of it and its title upon his death. She had the right to expect that the use and income of it would assist in supporting herself and her children. She had authority to maintain an action to defeat its fraudulent conveyance by her husband. (*Busenbark v. Busenbark,* 33 Kan. 572, 7 Pac. 245; *Flanigan v.*

*Waters,* 57 Kan. 18, 45 Pac. 56; *McKelvey v. McKelvey,* 75 Kan. 325, 89 Pac. 663.) All this was given up by joining in the agreement and in the execution of the deed. It is clear, also, that she was doing it for the benefit of her children, believing, under the circumstances, it would be best for them. Since plaintiffs chose not to make her a party to this action we cannot, and do not intend, to decide her ultimate rights. We consider her connection with this contract only as it applies to the right of her husband and his mother to rescind it without her consent. We think the court correctly held that could not be done.

Appellants contend that whatever the rights of Wauneta Hagerman might have been prior thereto that they were effectively cut off by the divorce decree of December 7, 1942. We think the most the divorce decree did in that respect was to cut off her right to be considered as one of the heirs of George J. Hagerman at the time of his death. Plaintiff had adopted the agreement, deed and will of January, 1934, as showing his only interest in real property. No attempt had been made at that time to rescind the contract of January 3, 1934, nor to revoke the will of that date. Defendant adopted plaintiff's statement as to his interest in real property. There was no occasion to do more. The decree did not set aside or in any way abrogate the fact that in January, 1934, she had made a contract for the benefit of her children and had given up substantial rights in order to do so. Those rights included, in addition to those previously mentioned, the right to have taken into account in a division of property or alimony allowance in the divorce action the property which she joined with her husband in giving to his mother in order that she might ultimately have greater rights go to her children.

Appellants cite the general rule that when two parties make a contract for the benefit of a third party, who knows nothing about it and never acted upon it, the contracting parties may rescind their contract, or make a new one which destroyed it, without the knowledge or consent of the third party. We think that rule not applicable here, for as to Wauneta Hagerman there were three contracting parties in January, 1934, and since she had given up valuable rights in the making of the contract she was entitled to be consulted or heard before an attempt was made to defeat the primary purpose which she had in mind in participating in it. The rule contended for is not applicable to the minor children for the reason that they

were too young to understand the nature of the contract. There had been no occasion for them to do anything, nor was there anything for them to do, in order to indicate an acceptance of it prior to the matters which occurred on August 22, 1944, and the beginning of this suit, at which time they acted promptly to have the contract of January, 1934, adhered to. The court specifically found that no one of them has indicated an unwillingness to accept under the terms of the contract and will of January, 1934. We concur in the trial court's conclusion that the contract and other papers executed on January 3, 1934, were made, in substantial part at least, for the benefit of the minor defendants in this action, who might be the heirs at law of their father at the time of his death. Under the facts and the law applicable thereto acceptance of its benefits was by them presumed, and that their father and his mother had no legal authority to rescind the contract and defeat their rights.

There is some discussion in the briefs as to the nature of the rights of these minors. In appellants' behalf it is contended their rights are contingent ones. We think it is properly so classified, or as vested rights subject to be divested by future circumstances. It is not necessary to decide that distinction here.

Appellants make an argument which leads to the view that the minor defendants really have no interest now. Plaintiff named them as parties defendant and also as representing the class of people who will be the heirs at law of their father at the time of his death. While it is true that no one can foretell the future, or determine with certainty how many of a family will die before another, yet for the present at least we are confident that they have such an interest in this matter that it is proper to make them parties defendant. We need not stop at this time to speculate as to what extent they might bind other persons who prove at some later time to be the heirs at law of their father.

The rule with reference to a third party beneficiary knowing or acting upon the contract made for his benefit is well considered in Restatement of the Law—Contracts, Chapter 6. Section 133 classifies such beneficiaries as "donee beneficiary," "creditor beneficiary," and "incidental beneficiary," and defines each class. Section 135 pertains to the duties created by gift promise. It reads:

"(a) a gift promise in a contract creates a duty of the promisor to the donee beneficiary to perform the promise; and the duty can be enforced by the donee beneficiary for his own benefit; (b) a gift promise also creates a

duty of the promisor to the promisee to render the promised performance to the donee beneficiary."

In the comment (a) it is said:

"No assent by a donee beneficiary to the contract or knowledge on his part of its existence is necessary to give him a right of action on it."

And in section 139 the rule is thus stated:

"It is not essential to the creation of a right in a donee beneficiary . . . that he be identified when a contract containing the promise is made."

Other sections of the chapter deal with the duty of the promisor to a creditor beneficiary, and also discuss the rights of incidental beneficiaries. The rules above stated make it clear that in the contract made by Sallie Hagerman and her son of January 3, 1934, the minor defendants in this action were donee beneficiaries, and it was not necessary to the validity of such a contract that they have any knowledge of its existence. Neither is it necessary that the ultimate beneficiaries be identified. In this connection see, also, *Waterman et al. v. Morgan et al.*, 114 Ind. 237, 16 N. E. 590.

We agree with the trial court's conclusions of law and hold that the contract between George J. Hagerman and his mother, Sallie Hagerman, of August 22, 1944, by which they attempted to rescind their contract of January 3, 1934, is invalid. The same holding applies to the deed executed by Sallie Hagerman to George J. Hagerman dated September 2, 1944. We also hold that the instrument executed by Sallie Hagerman on September 2, 1944, in which she attempted to revoke her will, was in violation of the contract of January 3, 1934, and ineffective to abrogate the contract.

Counsel for appellants call our attention to the rule that it is one of the 'characteristics' of a will that it is ambulatory in its nature and is subject to revocation later by the testator. That rule has been recognized in *Menke v. Duwe*, 117 Kan. 207, at page 216, 230 Pac. 1065. In *Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147, where a will was made in pursuance of a contract and the testator later made another will revoking the first, it was held the first will could not be probated as a will for the reason that it had been revoked, but the contract, in accordance with which it was made, could be enforced, and that the later will was of no validity except as to an item not included within the contract.

See, also, *Braden v. Neal*, 132 Kan. 387, 295 Pac. 678, where a childless husband and wife, each of whom had substantial property,

made an oral agreement that neither would make a will while both lived, but that the survivor would make a will leaving all the property to certain relatives of the husband and certain relatives of the wife. After his death she made a will or otherwise disposed of all the property to her relatives. The will was admitted to probate and an executor was appointed. The relatives of the husband, who would have been benefited by the will had it been made in accordance with the original agreement, brought an action in the district court to establish their contract and to have the property divided in harmony with it. Considering a demurrer to the petition, this court held that the action could be maintained.

Perhaps beginning with *Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743, there are a number of decisions in our reports which enforce contracts to make wills.

This is an action under our declaratory judgments statute (G. S. 1935, 60-3127) for a binding adjudication of rights, and upon the record before us we do no more.

In the trial court the guardian *ad litem* appointed for the minors, in addition to filing the answer previously referred to herein, filed a cross petition setting up all the facts and praying that the contract of August 22, 1944, of George J. Hagerman and his mother, purporting to cancel their contract of January 3, 1934, be set aside; also, that the instrument executed by Sallie Hagerman on September 2, 1944, attempting to revoke her will be set aside, and that the instruments executed January 3, 1934, be adjudged binding. An answer, consisting of a general denial, was filed to that cross petition, but no further attention was given to it in the trial court. We understand that branch of the case has not been disposed of and is still pending in the trial court. Perhaps, in view of our decision, the parties will take such action as to make the further consideration of this branch of the case unnecessary; if not, it should be tried out.

The judgment of the court below is affirmed.