No. 40,181

PEARL BRENT, *Appellee,* v. ALDA McDONALD, et al., *Appellant.*

(300 P. 2d 396)

Opinion filed July 13, 1956.

*Wm. B. Ryan,* of Norton, argued the cause, and *George P. Nellans, Jr.,* was with him on the briefs for the appellant.

*Keith G. Sebelius,* of Norton, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to partition 960 acres of real estate in Norton County. The parties were the heirs at law of Charles

Lincoln Cooley, deceased, and children of deceased heirs at law. Pearl Brent, a daughter, was plaintiff and is the appellee. Alda McDonald, a daughter, was the only defendant who made any defense, and is the appellant. There was no dispute as to the interests of the other parties defendant. Pearl Brent contended that she was the owner of an undivided one-seventh interest in the real estate pursuant to a judgment rendered by the district court of Norton County, Case No. 5398, and in accordance with a family settlement entered into October 20, 1943. Alda McDonald contended she was the owner of a two-sevenths interest in such property; one-seventh interest which she received pursuant to the family settlement and another one-seventh interest which she purchased in 1936. The trial court entered judgment that Pearl Brent was the owner of an undivided one-seventh interest in the real estate, and from this judgment Alda McDonald has appealed.

While this appeal was pending Pearl Brent died. The action was revived against the defendants in the names of her heirs at law. For the purpose of this opinion her heirs at law will be collectively referred to as Pearl Brent.

The facts so far as pertinent to this appeal may be summarized as follows: On March 25, 1932, Charles Lincoln Cooley died testate, a resident of Norton County, and the owner of the real estate involved. He was survived by his wife, Lillie Cooley, and their seven children: Pearl Brent, the plaintiff; Loretta Stockbridge; Lennie Evans; Alda McDonald, the principal defendant; Valda Knobel; Avis Craven; and, Charles S. Cooley. The testator's will was admitted to probate in Norton County May 5, 1932. He nominated his wife, Lillie Cooley, and his son, Charles S. Cooley, as executors and directed them to sell the personal property as soon as practicable and to divide the proceeds equally among his seven children.

The portion of the will pertinent to this controversy, reads:

"Fourth, I hereby direct that my wife Lillie Cooley of Logan, Norton County, Kansas, is to receive all of the net income derived from agriculture purposes from the land that I own and described as follows, Section Fourteen (14) and the west half of Section Eleven (11), Lincoln Township, Norton County, Kansas, for ten years after my death, or until her death if she does not live for ten years after my death. At the end of ten years after my death I hereby direct that my land be sold and the proceeds of said sale be divided as follows, my wife Lillie Cooley is to receive Five Thousand Dollars ($5,-000.00) in cash and the balance is to be equally divided between my seven children above named. If any one of them shall have died leaving issue, her or his share shall go to such issue, but if any one shall have died without

issue her or his share shall be divided equally among those who survive. Any income what-so-ever derived from my land from oil purposes or other sources not here-to-fore mentioned is to be divided as follows, my wife Lillie Cooley above named is to receive one half of such income and the other half is to be divided equally between my seven children as it is received."

Lillie Cooley elected to take under the testator's will. She died intestate December 21, 1933.

On May 18, 1932, The First State Bank of Alton commenced an action against Pearl Brent and J. J. Brent, her husband, in the district court of Norton County, to recover an indebtedness owed by the Brents, and attached a one-seventh interest in the real estate as belonging to Pearl Brent. This was case No. 5048. At that time the Brents were residents of the State of Iowa and service by publication was made upon them. On January 9, 1933, judgment was rendered against the Brents for $1,873, and the one-seventh interest of Pearl Brent in the real estate was ordered sold. On January 2, 1934, Pearl Brent's one-seventh interest was sold to The First State Bank of Alton, and redemption was fixed at eighteen months. On September 10, 1935, no redemption being made, a sheriff's deed was issued to The First State Bank of Osborne, the successor to the Alton bank, and was filed of record in Norton County September 11, 1935.

On September 17, 1935, The First State Bank of Osborne commenced an action in the district court of Norton County to partition the real estate devised by the testator's will. This was case No. 5398. All of the heirs at law of the decedent, except Pearl Brent, were made parties defendant including Charles S. Cooley, as executor. Pearl Brent asked for and received permission to intervene. Charles S. Cooley, individually and as executor, Alda McDonald and Valda Knobel were represented by L. H. Wilder, the attorney for the decedent's estate; defendants Loretta Stockbridge, Avis Craven and the intervenor, Pearl Brent, were represented by Mahin and Mahin of Smith Center. Answers of both groups of defendants were filed. The answer of Alda McDonald alleged that the will of the testator created an equitable conversion; that the Osborne bank had no title to such real estate by reason of any pretended sale thereof or other pretended proceedings, and had no interest therein at that time. Her prayer was that the Osborne bank be adjudged to have no interest in the real estate. Charles S. Cooley, as executor, filed a similar answer, and prayed that the Osborne bank be enjoined from making claims to such real estate and that the title be

quieted. Almost identical answers were filed by defendants Loretta Stockbridge, Avis Craven and the intervenor, Pearl Brent. The Osborne bank filed a reply to the answers of the defendants.

On January 14, 1936, with the issues thus joined, trial was had by the court. When it appeared that a settlement of the controversy might be effected, an adjournment was ordered for such purpose. On January 22, 1936, the parties filed a stipulation which recited that a settlement had been agreed upon, and requested that the action be dismissed with prejudice. Thereafter, and on March 10, 1936, all the parties appeared in court and announced that a settlement of the controversy had been effected. The trial court found that the Osborne bank, for a proper consideration, had transferred its "claimed interest" in the real estate to the defendant Alda McDonald; that the action should be dismissed with prejudice; that the settlement and the deed from the Osborne bank to Alda McDonald should be approved, "and that the defendants hold title to such lands, per terms of will of Charles Lincoln Cooley, deceased."

On January 20, 1936, as a part of the settlement and dismissal of case No. 5398 the Osborne bank executed and delivered to Alda McDonald a quitclaim deed to the one-seventh interest in the real estate. This deed was recorded in Norton County January 22, 1936, and was the deed by which Alda McDonald claimed she acquired the one-seventh interest in the real estate formerly owned by Pearl Brent. Alda McDonald claimed she paid the Osborne bank $520 as consideration for the quitclaim deed.

On October 20, 1943, all of the heirs at law, legatees and devisees of Charles Lincoln Cooley, deceased, including Pearl Brent, entered into a family settlement by an instrument entitled "Agreement for the Abrogation of Will." The agreement recited that Lillie Cooley, widow of the deceased, died intestate December 21, 1933; that all of the debts of the estate had been paid; that all of the items of the will had been fully performed or had by changed conditions become inoperative and/or void except the fourth item of the will directing the sale of the lands and the division of the proceeds among the parties thereto. It further reads:

"Whereas, by reason of the economic conditions, and land value it has not been possible to dispose of the lands belonging to said estate to advantage; and

"Whereas all parties entitled to share in the distributions of the proceeds of any such sale, desire to retain the lands rather than receiving the proceeds of the sale thereof;

"Now THEREFORE, IT IS HEREBY MUTUALLY agreed, by and between the

parties hereto, each for and in consideration of the promises and agreements of the other parties hereto, hereby made, that they will, and do hereby, the court consenting, abrogate that part of the Will of the deceased not yet fulfilled, directing the sale of the lands belonging to said estate, to-wit: (real estate described), and that said lands shall be held and owned as same would now be held and owned if said lands had been bequeathed in lieu and instead of the proceeds of the sale thereof:

"That the executor shall make his final accounting and settlement with the Court and be discharged as executor of the estate; and

"That said lands shall be held by the owners thereof, as tenants in common, in the same interest or proportion as the fund arising from a sale thereof would now be divided by the executor under the direction of the Court."

On February 28, 1944, pursuant to the petition of Charles S. Cooley, executor, for final settlement, determination of descent, decree of title and discharge, the probate court of Norton County found that the estate of Charles Lincoln Cooley, deceased, had been fully administered; that one of the daughters of the decedent, Loretta Stockbridge, died leaving two sons, Edgar Stockbridge and Ira Stockbridge, who, by the terms of the will of the decedent, became entitled to all of the rights and interests of their deceased mother; and that,

". . . under date of October 20th, 1943, all parties in interest in said lands and estate entered into an agreement in writing and duly acknowledged, whereby they agree to abrogate the clause or condition of said Will directing the sale of said lands and to retain said lands as tenants in common in the interests and proportions they would have received in the proceeds thereof; which abrogation agreement is examined by the court, found fair and equitable; and that the same should be and hereby is approved and confirmed; and the title to said lands, subject to the life interest of the said Lillie Cooley, now deceased, and subject to any lawful conveyance thereof since made, is hereby decreed, as of the date of the death of said Charles Lincoln Cooley, to the following named persons, in the share or proportion set opposite their respective names, to-wit:

To Lennie Evans, an undivided one seventh,
To Pearl Brent, on undivided one seventh,
To Alda McDonald, an undivided one seventh,
To Valda Knobel, an undivided one seventh,
To Charles S. Cooley, an undivided one seventh,
To Avis Craven, an undivided one seventh,
To Edgar Stockbridge, an undivided one-fourteenth,
To Ira Stockbridge, an undivided one-fourteenth."

No appeal was taken from that order and it became final.

On May 10, 1937, all of the heirs at law of the decedent except Pearl Brent and Lennie Evans executed an oil and gas lease cover-

ing all of the real estate. This lease was approved by the probate court and filed of record on October 28, 1937. Thereafter, and on January 14, 1941, all of the heirs at law except Pearl Brent executed three separate oil and gas leases covering all or portions of the real estate. All of these oil and gas leases were executed by Charles S. Cooley, executor and as attorney in fact for the heirs at law of the decedent, and prior to the family settlement. All money from oil and gas leases prior to February 28, 1944, the date of final settlement, was received by Charles S. Cooley, executor, and used in payment of debts of the estate.

Between December 8, 1948, and January 20, 1951, nine additional oil and gas leases were executed and delivered by the heirs at law of the decedent, except Pearl Brent, covering all or portions of the real estate, which were duly recorded. The record is silent as to whom the delayed rental payments were made, however, it is clear that Pearl Brent did not receive any part of such payments.

On January 21, 1955, the action out of which this appeal arose was commenced by Pearl Brent filing a petition to partition the real estate of the decedent, in which all of the heirs at law and the children of deceased heirs at law were made parties defendant. The pleadings will not be summarized. Alda McDonald was the principal defendant and was the only one who filed an answer. Pearl Brent filed a reply and an amended reply to the answer.

On September 23, 1955, with the issues thus joined the case was tried by the court, who made findings of fact and conclusions of law and rendered judgment for the plaintiff. The findings of the trial court best tell the story of the relations of the parties, as follows:

"1. That the defendant, Alda McDonald, paid $820.00 in settlement of the claims of the Osborne bank in the partition action, being case number 5398.

"2. That said settlement was made for the benefit of all of the heirs and beneficiaries under the will of Charles Lincoln Cooley, deceased.

"3. That she did not intend by such payment and by the receiving of the deed from the said Osborne bank to acquire for her own benefit the interest of Pearl Brent in the Cooley land.

"4. That she has received the rentals on the interests of Pearl Brent after the time of acquiring or of settling with said Osborne bank down to March 29, 1951. That there is no evidence as to the amount of rentals received.

"5. That she has received $900.00 in rentals beginning with about March 29, 1951, and, that, according to plaintiff's own testimony she has paid plaintiff $1050.00 during that same time.

"6. The court doesn't find that these payments were specifically made as

a payment of rentals to Pearl Brent, but, does find that the same equalled and slightly exceeded the rentals actually received during that time.

"7. The court finds that the rentals received by Alda McDonald prior to March, 1951, probably equalled the interest that she would otherwise have been entitled to on the $820.00 advanced by her. The court finds that the interest on the same at 6 per cent from that date until the time of trial amounts to $221.00.

"8. The court finds that L. H. Wilder was the attorney for Alda McDonald in the said action No. 5398.

"9. The court doesn't find that the plaintiff, Pearl Brent, was notified that the defendant, Alda McDonald was claiming adversely to her prior to the date of the final settlement of the Cooley Estate, which was had on the 28th day of February, 1944, and, that fifteen years adverse possession has not run against Pearl Brent since that time."

## Subsequently, the trial court made additional findings of fact:

"1. The Court finds that all of rentals on land in question, including those of interest of Pearl Brent, were received by Charles S. Cooley, as executor, down to the time of final settlement of Cooley estate in 1944. This finding is made in connection with original finding number 4 of the court.

"2. In connection with original finding number 5, the Court finds that the defendant McDonald, paid plaintiff $1,050.00, according to testimony introduced on plaintiff's behalf, rather than according to plaintiff's personal testimony, as a witness in her own behalf.

"3. The Court finds that the actual amount of rentals received by Alda McDonald, prior to March, 1951, is a matter within her own personal knowledge, but that she did not start paying any of same or giving any money to plaintiff until after 1951.

"4. The court finds that Mahin & Mahin were attorneys for Pearl Brent in case number 5048 in the District Court of Norton County, Kansas."

## The trial court's conclusions of law read:

"1. That a claim of adverse possession does not run against a co-tenant on behalf of another co-tenant unless the intention to claim adversely clearly and unequivocally appears.

"2. That Pearl Brent was adjudicated a ⅐ interest in said land subject to the other terms of the will of Charles Lincoln Cooley, deceased, by the judgment in case No. 5398; that this interest was recognized by the defendant, Alda McDonald, in the agreement for the abrogation of the will under date of October 20, 1943; and, that this interest was also recognized and adjudicated in the judgment of final settlement in the matter of the Estate of Charles Lincoln Cooley, deceased, and, that she now has such interest, but, that, as an equitable matter, it should be subjected to a lien in the amount stated."

The trial court entered judgment by decreeing Pearl Brent to be the owner of an undivided one-seventh interest in the real estate subject to a lien of $1,041 in favor of Alda McDonald.

Although appellant makes five specifications of error of the trial

court: (1) It failed to render judgment for defendant on the pleadings; (2) it failed to require plaintiff at the commencement of the trial to elect on what theory she claimed ownership in the real estate; (3) it overruled defendant's demurrer to plaintiff's evidence; (4) it made erroneous findings of fact and conclusions of law and rendered judgment decreeing plaintiff to be the owner of a one-seventh interest in the real estate; and (5) it overruled defendant's motion for a new trial, she states the question involved as follows:

"The only controversy in this case concerns the dispute as to whether or not the plaintiff, Pearl Brent, owns any interest in the land, and whether or not the defendant, Alda McDonald, owns a two-sevenths ($\frac{2}{7}$) interest therein, one-seventh ($\frac{1}{7}$) of which she was bequeathed by the will of her father, and one-seventh ($\frac{1}{7}$) of which she acquired by deed as above set forth from the First State Bank of Osborne, Kansas."

We shall consider appellant's specifications of error in the order set forth above. With respect to the first and second specifications of error no further reference has been made to them and questions in connection therewith were neither briefed nor argued. Under such circumstances the universal rule of this court is that such questions must be regarded as abandoned and on appeal will not be reviewed or considered (*Henderson v. Deckert*, 160 Kan. 386, Syl. ¶ 1, 162 P. 2d 88; *State v. Anderson*, 172 Kan. 402, Syl. ¶ 1, 241 P. 2d 742; *Banbery v. Lewis*, 173 Kan. 59, 69, 244 P. 2d 202; *Blakeman v. Lofland*, 173 Kan. 725, 727, 252 P. 2d 852).

Appellant's third specification of error is that the trial court erred in overruling her demurrer to the evidence. Some of the facts and circumstances involved in this appeal have been heretofore set forth, and it would add nothing to this opinion to set out in detail the testimony of the different witnesses. Suffice it to say that careful and extended review of the record has been made and in conformity with our long-established rule, that in reviewing a ruling upon a demurrer to the evidence, this court does not weight or compare contradictory evidence but accepts all evidence as true and gives it the benefit of all presumptions and inferences that may properly be drawn therefrom and considers only such portion thereof as is favorable to the party adducing it (*Nigh v. Wondra*, 167 Kan. 701, 208 P. 2d 239; *Messinger v. Fulton*, 173 Kan. 851, 252 P. 2d 904; *Briggs v. Burk*, 174 Kan. 440, 442, 257 P. 2d 164; *Siegrist v. Wheeler*, 175 Kan. 11, 259 P. 2d 223; *Spencer v. Supernois*, 176 Kan. 135, 268 P. 2d 946; *Stephens v. Bacon*, 176 Kan. 460, 461, 271 P. 2d 285; *Maust v. Ioerger*, 177 Kan. 558, 280 P. 2d 566; and other

decisions to the same effect listed in West's Kansas Digest, Appeal & Error, § 927 [5], Trial, § 156 [2] and [3]; Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, § 488, Trial, §§ 149 to 151 incl.) we conclude there was sufficient evidence to support Pearl Brent's cause of action, and the trial court did not err in overruling appellant's demurrer.

Running through appellant's fourth specification of error, graphicly stated by her, is the principal question, "Who is the owner of Pearl Brent's one-seventh interest?" Appellant repeatedly asserts there was no evidence to support the trial court's finding that Pearl Brent was the owner of an undivided one-seventh interest. As preliminary to the consideration of this contention, we make note of the rule of this jurisdiction that the findings of fact made by the trial court upon conflicting testimony will not be disturbed by this court when there is competent evidence to sustain the findings made (*In re Estate of Ward*, 178 Kan. 366, 285 P. 2d 1081; *In re Estate of Whitmore*, 178 Kan. 491, 290 P. 2d 105; *In re Estate of Lasswell*, 178 Kan. 48, 283 P. 2d 247; *Mathey v. Central National Bank of Junction City*, 179 Kan. 291, 293 P. 2d 1012; and the many other cases on this point set forth in 2 West's Kansas Digest, Appeal & Error, §§ 1002, 1005; 1 Hatcher's Kansas Digest, [Rev. Ed.] Appeal & Error, § 496).

With this rule in mind we now examine appellant's contention. By the provisions of the testator's will the real estate was directed to be sold at the end of a ten-year period and its proceeds equally divided among the seven children. When this period expired in 1942, all of the provisions of the will had been performed except the item which directed that the land be sold. Due to economic conditions and land values it could not be sold to an advantage, and all parties entitled to share in its sale desired to retain it. To prevent the sale of the land as directed by the will required that the will be abrogated. To achieve this result it was necessary that the heirs and beneficiaries, including Pearl Brent, agree to its abrogation and to a division of the Cooley land. With these circumstances confronting the Cooley family, they entered into a family settlement on October 20, 1943, whereby it was agreed, in consideration of the mutual promises and agreements of each heir and beneficiary, that the will be abrogated and the real estate "shall be held and owned as same would now be held and owned if said lands had been bequeathed in lieu and instead of the proceeds of the sale thereof. . . . That said lands shall be held by the owners

thereof, as tenants in common, in the same interest or proportion as the fund arising from a sale therof would now be divided by the executor under the direction of the Court."

It was not necessary to have a family settlement to obtain a decree of final settlement and a distribution of the estate. When, however, the family settlement was entered into, it became necessary to have that agreement submitted to and approved by the probate court in order to obtain a decree of final settlement and an assignment of the real estate in accordance with its provisions (G. S. 1949, 59-2249; *Erwin v. Erwin,* 153 Kan. 703, 113 P. 2d 349; *In re Estate of Hinshaw,* 164 Kan. 550, 190 P. 2d 386). It is not contended that the agreement was invalid. Its express purpose was to abrogate the will and divide the land among the heirs. No rights of creditors being involved, family settlements of this character are favorites of the law and will be enforced when unconnected with fraud or gross injustice and are freely and fairly entered into, and, when so made, are given a liberal construction and should not be disturbed by those who entered into them (*Brown v. Baxter,* 77 Kan. 97, 94 Pac. 155; *Riffe v. Walton,* 105 Kan. 227, 182 Pac. 640, 6 A. L. R. 549; *Babst v. Babst,* 130 Kan. 826, 288 Pac. 593; *Richards v. Tiernan,* 150 Kan. 116, 91 P. 2d 22; *Hirt v. Bucklin State Bank,* 153 Kan. 194, 109 P. 2d 171; *Hagerman v. Hagerman,* 160 Kan. 742, 165 P. 2d 431; 26 C. J. S. Descent & Distribution, § 73, p. 1110), and such an agreement containing the mutual promises of the contracting parties is based upon a sufficient consideration (*Schnack v. City of Larned,* 106 Kan. 177, 186 Pac. 1012; *Bottom v. Harris,* 108 Kan. 7, 193 Pac. 1058; *Snuffer v. Westbrook,* 134 Kan. 793, 8 P. 2d 950; *West v. West,* 135 Kan. 223, 9 P. 2d 981; *Myers v. Noble,* 141 Kan. 432, 41 P. 2d 1021, 97 A. L. R. 463; 11 Am. Jur., Compromise & Settlement, § 11, p. 258). A family agreement entered into on the supposition of a right, or of a doubtful right, although it afterward turns out that the right was on the other side, is binding and enforceable among the parties to the agreement (*Froelich v. Froelich,* 155 Kan. 17, 122 P. 2d 759). However, such agreements will not be given effect to defeat a trust or specific restriction placed upon the property in the will (*Myers v. Noble,* supra).

Following the execution of the agreement the only question was who owned the land and how it should be divided. The probate court was directed to assign title to the land "in the same interest

or proportion as·the fund arising from a sale thereof would now be divided by the executor under the direction of the court." Final settlement was had·on February 28, 1944. The probate court found that the family settlement entered into October 20, 1943, was fair and equitable and decreed each of the heirs, including Pearl Brent, "subject to the life interest of the said Lillie Cooley, now deceased, and subject to any lawful conveyance thereof since made, is hereby decreed, as of the date of the death of said Charles Lincoln Cooley" the owner of an undivided one-seventh interest. No appeal was taken from that judgment and it became final. Thereafter, and on February 23, 1949, Charles S. Cooley was discharged as executor and the estate closed.

What was the effect of the agreement and the decree of final settlement? Appellant contends Pearl Brent had no rights and acquired none. We do not agree. None of the heirs or beneficiaries wanted the real estate sold, and when they requested Pearl Brent to become a party to the family agreement to abrogate the will they recognized she had rights and interests thereunder or they would not have requested she be a party to its abrogation. That she had rights thereunder is conceded. While she may have entered into the family settlement on the supposition of a right, or a doubtful right, nevertheless under the rule of this jurisdiction, the mutual promises of each of the heirs to abrogate the will and to provide for the division of the land in a manner different from that provided in the will, was a sufficient consideration to sustain the agreement and authorize the probate court to assign title to the real estate in accordance with its provisions.

The probate court was the proper court to approve the family settlement and it found it to be fair and equitable. While the agreement as well as the decree of final settlement may be in certain respects ambiguous, when they are read together we think it clear Pearl Brent was recognized by all of the heirs and the probate court as being the owner of an undivided one-seventh interest. By the terms of the agreement all of the heirs placed the division of the Cooley land under the direction of the probate court. But what is more important, probate courts have exclusive jurisdiction of final settlement and distribution of decedents' estates and are required to set forth in final decrees closing estates the nature and extent of the title which heirs· or devisees acquire in real estate (G. S. 1949, 59-2249; *Sharpe v. Sharpe*, 164 Kan. 484, 190 P. 2d 344). The pro-

bate court complied with this admonition. It expressly named Pearl Brent, together with the other heirs, as an owner and assigned to her an undivided one-seventh interest subject to the life estate of Lillie Cooley, deceased, and subject to any lawful conveyance since made, as of the date of her father's death. Her mother died in 1933, thus the first condition did not exist in 1944. Moreover, Pearl Brent made no conveyance of her interest at any time, thus the second condition did not exist in 1944, regardless of when it was intended to operate. Similar language to the phrase "and subject to any lawful conveyance thereof since made" is used by probate courts in assigning title to real property in intestate estates. (See, 4 Bartlett's Kansas Probate Law and Practice, [Rev. Ed.] Probate Forms, Final Settlement, § 2515, p. 522.) We do not deem it of particular significance that the respective interests of the Cooley children were assigned to them as of the date of their father's death. The testator's will spoke from the date of his death, and while the will and its provisions remained of record and unchanged, the effect of the family settlement provided for a distribution of the estate in 1943 in a manner different from that provided in the will. For practical purposes it appears the probate court considered the estate as one of intestacy and assigned the property pursuant to the agreement. While it would have been proper to assign title to the real estate as of February 28, 1944, the date of final settlement, it was not improper to assign the title to the real estate as of the date of the decedent's death.

Appellant was a party to the agreement and had notice of the final settlement. At no time did she assert title as the successor to Pearl Brent's interest. Had she asserted the right she now asserts when the agreement was executed and final settlement made this controversy would not have arisen. If she intended to claim Pearl Brent's interest pursuant to the quitclaim deed she could have produced it in the probate court and asked that court to assign such interest to her. But, she remained silent. She may not now assert rights contrary to the decree of final settlement when she stood by and did not then assert the claim she is now making (*Erwin v. Erwin,* supra; *Down v. Austenfeld,* 162 Kan. 562, 565, 178 P. 2d 201; *In re Estate of Welch,* 167 Kan. 97, 204 P. 2d 714). The failure to assert a claim in a family settlement to certain property, which is left in the possession of other heirs, may act as a relinquishment to the right, title and interest in such property (26 C. J. S., Descent

and Distribution, § 73, p. 1112). It necessarily follows that if appellant was then claiming to be the successor to Pearl Brent's interest she should have pursued the remedy available to her by appealing from the decree of final settlement. Since no appeal was made the decree became final and it is binding upon her.

The trial court concluded as a matter of law that Pearl Brent was adjudicated a one-seventh interest in the real estate subject to the other terms of the will of the testator by the judgment of dismissal in case No. 5398, which provided, "that the defendants hold title to such lands, per terms of will of Charles Lincoln Cooley, deceased." Appellant contends this conclusion was erroneous for the reason that Pearl Brent was not a defendant in that action. The point is not well taken. While Pearl Brent was not made a party defendant, she was permitted to and did intervene, and the judgment of March 10, 1936, was as binding upon her as upon any and all other parties thereto. Likewise, she acquired the same rights thereunder as any and all other parties defendant. In *Wiseman v. Richardson,* 154 Kan. 245, 118 P. 2d 605, it was said:

". . . Under well-established precedents one who at his own behest is permitted to interplead or intervene in a lawsuit becomes a litigant in that lawsuit just as much as any and all other parties thereto and is bound by the judgment although he takes nothing by its terms. (*Lynn v. McCue,* 96 Kan. 114, 150 Pac. 523; *Hoxie State Bank v. Vaughn,* 137 Kan. 648, 651, 652, 21 P. 2d 356; 1 Freeman on Judgments, 5th ed., §§ 411, 412.)" (l. c. 250.)

Appellant next contends that when Charles S. Cooley, as executor and as attorney in fact for all of the heirs at law, except Pearl Brent, executed the oil and gas leases in 1941, and acknowledged such leases as "attorney in fact for the heirs owning any right, title or interest in lands belonging to said estate," this constituted notice to Pearl Brent that she had no interest in the real estate. The fallacy of the contention is that these acknowledgments were made prior to the date of the family settlement in 1943, and the decree of final settlement in 1944, when the heirs at law and the probate court recognized and found her to be an owner of an undivided one-seventh interest. There is another reason equally potent: Statements or representations made by Charles S. Cooley, as executor and attorney in fact for the other heirs, that Pearl Brent did not own any interest in the real estate was not binding upon her and did not affect her ownership in any manner. Although factually dissimilar, see, *In re Estate of McFarland,* 118 Kan. 534, 235 Pac. 832.

The appellant further contends that when she recorded the quit-claim deed from the Osborne bank in 1936, it was notice to Pearl Brent that she claimed to own the one-seventh interest in question, and, further, that she has held this interest adversely to Pearl Brent for some nineteen years. She cites and relies principally upon *Nelson v. Oberg,* 88 Kan. 14, 127 Pac. 767. In that case the mother of the plaintiff executed a deed to her son for an 80-acre tract of land in which the plaintiff, a daughter, claimed an interest. The deed was recorded and we concluded it was declaration and notice to the daughter that both the mother and son were holding adversely to the daughter and that each was claiming the daughter had no interest in the land; that such notice amounted to an unequivocal ouster and that the deed was actual notice to the sister of the mother's and son's assertion of full title and right to possession of the entire tract. Although this decision is sound and we affirm its holding, it is clearly distinguishable from the facts presented here. In the Nelson case, *supra,* there was no family settlement or judgment of final settlement decreeing that the sister was the owner of an undivided interest in the real estate there involved. Here, from the time of probate of the testator's will in 1932, until final settlement of the estate in 1944, none of the heirs or beneficiaries were in possession of the real estate, except the executor who applied the rents and profits from the land to the management of the estate and in payment of taxes and debts. In 1943, the testator's will was abrogated by the mutual agreement of his heirs. Appellant made no mention in the family settlement of her claim to Pearl Brent's interest by virtue of the quitclaim deed. Neither was such claim presented to the probate court on final settlement, and by that decree the probate court assigned an undivided one-seventh interest to Pearl Brent. We think the contention has no merit.

Appellant's fifth specification of error is that the trial court erred in overruling her motion for a new trial. In view of the conclusions heretofore set forth in this opinion, suffice it to say we think the trial court did not err in overruling appellant's motion for a new trial.

We have carefully and diligently reviewed the record and find no error. We think there was sufficient competent evidence to sustain the trial court's findings of fact and conclusions of law. As a part of the judgment the trial court concluded that the interest of Pearl Brent was subject to a lien in favor of appellant in the sum of $1,041. We think this was justified.

The judgment of the trial court is affirmed.